# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 04-2452 & 04-2949

ORLAY HERNANDEZ-BAENA and
SANDRA CARRERA-GARCIA,

*Petitioners*,

v.

ALBERTO GONZALES,

*Respondent.*

———————

Petitions for Review of an Order of
the Board of Immigration Appeals.
No. A96 158 735 & No. A96 158 736

———————

ARGUED APRIL 1, 2005—DECIDED AUGUST 4, 2005

———————

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Orlay Hernandez-Baena and Sandra Carrera-Garcia, natives of Colombia, entered the United States as non-immigrant visitors and overstayed their visas. They filed for asylum, claiming that Hernandez-Baena had suffered persecution on account of political opinion or imputed political opinion when the Revolutionary Armed Forces of Colombia (FARC) threatened his life because he refused to sell them military supplies. An Immigration Judge (IJ) denied all relief except voluntary

departure, and the Board of Immigration Appeals (BIA) affirmed without opinion. For the reasons explained below, we deny the petition for review.

## I.

The facts of the case are not in dispute, as the IJ credited petitioners' testimony in full. Carrera-Garcia's claims are derivative of Hernandez-Baena's and thus we focus on his claims. Hernandez-Baena ran a military supply business in Bogota. He sold boots and other supplies to the military and to the police, as well as to private organizations such as the Red Cross. Under Colombian law, private individuals wishing to purchase such supplies were required to present military or police credentials, or a permit from the government. In July 2000 two men in civilian clothing entered the store and attempted to purchase military boots and other supplies without the required documentation. Hernandez-Baena told the men that he could not sell them the goods because he could end up in prison for doing so. Later that day, a different man came to the store and demanded that Hernandez-Baena "do what he was told to do in the morning" or be killed. Hernandez-Baena asked who the men were; he was told that they were members of FARC, Colombia's largest rebel group, and that they knew where he and his family lived. Hernandez-Baena described FARC as a guerilla force responsible for the deaths and kidnappings of many Colombians. Terrified by the threat, he abandoned his store and fled Bogota the following day with Carrera-Garcia.

Petitioners stayed with family members in Pereira, a city about 70 miles from Bogota where Hernandez-Baena maintained an office. A week after they arrived, someone telephoned the office and stated that Hernandez-Baena's "death sentence" had been signed and that he would be found wherever he was hiding. Hernandez-Baena reported

the threatening phone call to the police, who put a wiretap on the phone. No further calls were received. After remaining in Pereira for seven months without incident, Hernandez-Baena and Carrera-Garcia left Colombia for the United States. They married shortly after arriving. In September 2001, their daughter was born in the United States. In October, the couple and their newborn daughter returned to Colombia, where they stayed "in hiding" at the home of Hernandez-Baena's mother in Pereira for two and half months without receiving any threats.

The petitioners filed for asylum, claiming that Hernandez-Baena suffered past persecution on account of political opinion or imputed political opinion when FARC targeted him for death for refusing to sell military supplies in violation of Colombian law. Hernandez-Baena also claimed that he had a well-founded fear of future persecution, contending that FARC would carry out its death threat if he returned to Colombia. The petitioners were served with a Notice to Appear charging them with removability under 8 U.S.C. § 1227(a)(1)(B). They conceded removability, renewed their applications for asylum, and sought in addition withholding of removal, protection under the Convention Against Torture, and in the alternative, voluntary departure.

Although the IJ did not doubt the veracity of petitioners' description of events, he rejected their claim that Hernandez-Baena had been persecuted on account of political opinion. The IJ determined that the two oral threats amounted to harassment rather than persecution and further concluded that Hernandez-Baena was not harassed "on account of" a political opinion. The IJ also concluded that petitioners had not demonstrated a well-founded fear of future persecution because their fear was not objectively reasonable in light of evidence that the Colombian government was not unable or unwilling to protect its citizens from FARC. The IJ also denied the claims for withholding

of removal and relief under the Convention Against Torture because petitioners had not satisfied the less stringent burden of proof for asylum eligibility. The BIA affirmed without opinion, and after unsuccessfully seeking reconsideration and reopening, Hernandez-Baena and Carrera-Garcia filed this petition for review.

## II.

To establish eligibility for asylum, an applicant must demonstrate that he is a "refugee" within the meaning of the Immigration and Nationality Act, which defines "refugee" as "one who is unable or unwilling to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005). If an applicant has suffered persecution in the past, he is entitled to a rebuttable presumption of a well-founded fear of future persecution. *Tolosa v. Ashcroft*, 384 F.3d 906, 908 (7th Cir. 2004). Otherwise, he must establish that he genuinely fears persecution based on a protected ground and show, based upon credible, direct, and specific evidence, that a reasonable person in the same circumstances would fear persecution if returned to the petitioner's country. *Oforji v. Ashcroft*, 354 F.3d 609, 613 (7th Cir. 2003). The applicant bears the burden of proving that he is eligible for asylum. *Jamal-Daoud*, 403 F.3d at 922; 8 C.F.R. § 208.13(a).

Because the BIA affirmed without opinion, we review the decision of the IJ directly to determine if it is supported by substantial evidence. *Tolosa*, 384 F.3d at 908; *Oforji*, 354 F.3d at 612. We will affirm the IJ's denial of asylum if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992), and reverse it only

where the evidence is so compelling that no reasonable factfinder could fail to find the requisite fear of persecution, *id.* at 483-84.

Petitioners first challenge the IJ's conclusion that the threats against Hernandez-Baena did not amount to past persecution, and that in any event the threats were not "on account of" an imputed political opinion. They argue that FARC's issuance of a "death warrant" against Hernandez-Baena amounts to more than an unfulfilled threat and rises to the level of persecution. Although we have not foreclosed the possibility that extraordinary threats—those "of a most immediate and menacing nature"—might in themselves amount to persecution, in general, unfulfilled threats do not. *Ahmed v. Ashcroft*, 348 F.3d 611, 616 (7th Cir. 2003); *see Boykov v. INS*, 109 F.3d 413, 416-17 (7th Cir. 1997). Hernandez-Baena's attempt to distinguish his case is unconvincing. He insists that the conduct went beyond mere unfulfilled threats because FARC *acted* upon its threats when it issued a "death warrant." But he supplied no evidence that the use of the term "death sentence" by the person who telephoned his office in Pereira had significance as anything other than a verbal threat. And the fact that he remained in Pereira for seven months after the threatening call without experiencing any further harm or threat of harm undermines the contention that the threat was of a sufficiently immediate and menacing nature as to constitute, without more, persecution.

The petitioners further argue that FARC's conduct was "on account of" imputed political opinion because Hernandez-Baena's refusal to deal with the guerillas frustrated FARC's political objectives and reflected support for the Colombian government. In that respect, this case is virtually indistinguishable from *Elias-Zacarias*, where the Supreme Court held that an applicant's failure to cooperate with a guerilla insurgency is neither political opinion nor a basis for imputed political opinion. 502 U.S. at 482, 483.

Moreover, we have recently stated that "a threat posed by an armed insurgency is not 'persecution.' " *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005) (holding that an Algerian national who was aligned with the government, and who had been threatened with death by armed rebels unless he assisted them, was not a victim of persecution). Indeed, Hernandez-Baena's own testimony demonstrates that he refused to comply with the request of the FARC members because he did not want to go to jail for violating Colombian law—not because of a political opinion. His refusal to cooperate with FARC is not a "political opinion" simply because his behavior conformed to the law. *Elias-Zacarias* also provides the basis for rejecting petitioners' conclusory argument that the IJ unreasonably sought direct proof of FARC's motive for threatening Hernandez-Baena. What the IJ sought, rightfully, was "*some* evidence of it, direct or circumstantial." *Elias-Zacarias*, 502 U.S. at 483.

Petitioners next challenge the IJ's conclusion that Hernandez-Baena lacked a well-founded fear of future persecution, essentially arguing that because "[t]his record is barren of evidence that FARC ever lifted the death warrant it announced" in July 2000, he *per se* has a well-founded fear. Because the threat was never "lifted," they contend, "it must be presumed, for all intents and purposes, that Hernandez-Baena is under threat of death from FARC." But this argument misstates the burden of proof, which lays squarely on the applicant. *E.g.*, *Jamal-Daoud*, 403 F.3d at 922. Moreover, even if Hernandez-Baena is in fact "under threat of death," in order for us to reverse the IJ's decision, we would effectively have to conclude that the Colombian government is unable or unwilling to protect its citizens from FARC. *See Hor*, 400 F.3d at 485 ("Persecution is something a *government* does, either directly or by abetting (and thus becoming responsible for) private discrimination by throwing in its lot with the deeds or by providing protection so ineffectual that it becomes a sensible inference

that the government sponsors the misconduct."); *cf. Bace v. Ashcroft*, 352 F.3d 1133, 1138-39 (7th Cir. 2003) (Attacks not actually directed by the state amounted to persecution where "attackers clearly had a political motivation."). But in this case the record does not support such a conclusion; indeed, the opposite appears to be true. When Hernandez-Baena reported the death threat, police responded immediately by wiretapping his phone in order to trace the caller. No further threats have been received since the police response. Under these circumstances, petitioners would be hard pressed to demonstrate any connection between the government and FARC's threats. *See Roman v. INS*, 233 F.3d 1027, 1035 (7th Cir. 2000). The IJ's conclusion that petitioners' fear of future persecution was not objectively reasonable was supported by substantial evidence, and accordingly, asylum was properly denied.

Finally, petitioners challenge the BIA's refusal to reconsider or reopen their administrative appeal. We review the denial of such motions for abuse of discretion. *Singh v. Gonzales*, 404 F.3d 1024, 1027 (7th Cir. 2005). A motion to reconsider "asks that a decision be reexamined in light of additional legal arguments, a change of law, or an argument that was overlooked earlier." *Patel v. Ashcroft*, 378 F.3d 610, 612 (7th Cir. 2004). The BIA concluded that the petitioners raised no error of law or fact in the earlier decision that would warrant reopening, and this decision was not an abuse of discretion. Nor can we say the BIA abused its discretion by declining to reopen the appeal. As we have explained, "a motion to reopen asks for reconsideration on the basis of facts or evidence not available at the time of the original decision, such as changed country conditions." *Id.* Petitioners provided different translations of documents that were already in the record, but nothing in their memorandum and attachments presented new facts or evidence warranting reopening. The BIA was therefore within its discretion in denying the motion.

For the reasons stated above, we DENY the petition for review.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*