**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 28, 2006
Decided March 23, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2480

Bharatkumar A. Patel,
                            *Petitioner,*

          *v.*

Alberto R. Gonzales, Attorney General
of the United States,
                            *Respondent.*

Petition for Review
of an Order of the
Board of Immigration Appeals

No. A79-418-980

**O R D E R**

Bharatkumar Patel, a native and citizen of the state of Gujarat in India, petitions for review of an order of the Board of Immigration Appeals summarily affirming the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture. Patel conceded that he is removable for trying to enter the United States with an altered visa, but he requested asylum on the ground that he was persecuted for his political beliefs. Members of the Tbharatiya Janata Party (BJP) singled him out and threatened to kill him, he asserted, because he helped his uncle campaign for a rival party's candidates, who ousted incumbent BJP officials in a local

election. The immigration judge denied the application, reasoning that Patel had not established past persecution or that his fear of future persecution was well-founded; the BIA affirmed without opinion. We conclude that the IJ's decision was supported by the evidence, and we therefore deny the petition for review.

## I

Patel, who was 24 years old at the time, attempted to enter the United States with false papers on August 26, 2001, but he was caught. He conceded removability and in July 2002 applied for asylum. Patel received a hearing before an IJ in February 2004.

At his hearing, he testified that he grew up and lived in Gujarat's Mahesana district with his parents, brother, and sister. Patel's uncle, Shanka Rlal, was a social worker for Samaj Krlyan, a community group that distributes school books to needy children. Before November 2000 Rlal had been a supporter of the BJP. He became disenchanted with the BJP's handling of relief funds after a January 2000 earthquake,[1] and several months before local elections scheduled for January 2001 he switched his allegiance to the other major political party, the Congress Party (apparently with the support of Samaj Krlyan). Rlal then campaigned on behalf of the Congress Party candidates from November 2000 until the January 2001 elections. Though not themselves members of any political party, Patel and his entire family assisted Rlal's campaign efforts. The Congress party prevailed in the local elections, although BJP controlled the national government from 1998 to 2004.

After the local BJP loss, some people whom Patel identified as BJP workers blamed Rlal and Patel's family for defecting and costing them the election. They went so far as to threaten to kill Patel "about two or three times." At the hearing, Patel was unable to recall any details of these encounters or even the months in which they occurred. Some time after the election Patel's father's farm burned down and "everything was burned out." Patel could not recall when the fire happened and conceded that nobody

---

[1] We note that the timing of these events strikes us as a bit odd. Although the IJ referred in his oral opinion to an earthquake in Gujarat that occurred in January 2000, this date may be a year off. On January 26, 2001, Gujarat suffered a catastrophic earthquake measuring 7.9 on the Richter Scale. See, *e.g.,* Embassy of India website, http://www.indianembassy.org/new/earth_quake_2001.htm; Wikipedia, http://www.en.wikipedia.org/wiki/2001_Gujarat_Earthquake. Although this plainly does not preclude the possibility of another, lesser earthquake a year earlier, no such event is mentioned in any of the news reports about the 2001 quake. The sequence of events to which Patel testified might seem different if the earthquake did not occur until January 2001. Because the resolution of this question makes no difference to our decision, however, we do not pursue it further here.

witnessed how it started. In March 2001 Rlal died in a motorcycle accident. Patel speculated that BJP workers were behind both the fire and the death of his uncle, but he presented no evidence supporting this supposition. After Rlal's death Patel fled Mahesana. He spent five uneventful months in "Bombay and other big cities" before leaving India in August 2001. Patel's family has remained unharmed in Mahesana, but his mother has warned him that it is not safe for him to return there.

The IJ denied Patel's application, concluding that his testimony fell "far short" of establishing past persecution and that he did not have a well-founded fear of future persecution. The IJ described Patel's testimony as "vague and meager," and thus presumably not credible; he also faulted it for lack of corroboration. Furthermore, the IJ reasoned, even if the testimony was credible, the "two or three" death threats did not constitute past persecution. The unfulfilled threats were not enough to create an objectively reasonable fear of returning to India, given the lack of evidence indicating that the people who threatened Patel five years ago were earnest at the time, still sought to harm him now, or would hunt him down throughout India.

## II

Because the BIA used its "affirmance without opinion" procedure here, we review the IJ's decision directly. *Georgis v. Ashcroft,* 328 F.3d 962, 966-67 (7th Cir. 2003). Patel first urges us to find that his testimony was enough to establish past persecution. Though his argument is difficult to parse, he challenges the IJ's adverse credibility finding and disputes the IJ's demand for corroborating evidence. This court accords deference to an IJ's credibility determination if it is supported by "specific, cogent reasons" that bear a legitimate nexus to the finding." *Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir. 1999). An IJ may not base an adverse credibility finding on an applicant's failure to supply corroborating documents without explaining why he or she reasonably thinks those documents are available. See the Real ID Act, Pub. L. No. 109-13, Title VI, Subtitle B, § 101, 119 Stat 231, 305 (May 11, 2005) (amending 8 U.S.C. § 1252(b)(4)); see also *Hor v. Gonzales*, 421 F.3d 497, 500-01 (7th Cir. 2005); *Gontcharova v. Ashcroft*, 384 F.3d 873, 877 (7th Cir. 2004).

As we interpret the IJ's oral opinion, he turned to the subject of corroboration only after concluding that Patel's testimony standing alone was not credible. (Had he as an initial matter used the lack of corroboration as a reason for finding lack of credibility, we would have a problem, but he did not.) Patel's entire claim of past persecution was based on threats that he was unable to articulate and for which he could not provide even general dates. In the face of such a scant record, the IJ was permitted to infer that the threats did not, as Patel maintained, cause him to fear for his life.

Even if the lack of corroboration somehow tainted the IJ's credibility determination, the result here would not change. The IJ went on to find that even if one believed

Patel's account, the threats he described did not demonstrate past persecution. If correct, that determination alone is enough to dispose of Patel's petition. This court has stated that "[i]n the vast majority of cases . . . mere threats will not, in and of themselves, compel a finding of past persecution." *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997); see *Tzankov v. INS*, 107 F.3d 516, 520 (7th Cir. 1997); *Borca v. INS*, 77 F.3d 210, 215 (7th Cir. 1996). Only "threats of a most immediate and menacing nature might, in some circumstances, constitute past persecution." *Boykov*, 109 F.3d at 416 (unfulfilled death threats alone held not sufficient); see *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005) (unfulfilled death threats did not qualify as persecution where applicant remained in native country unharmed). Substantial evidence supports the IJ's conclusion that the threats here were not so immediate and menacing that they amounted to past persecution. No one ever acted on the threats against Patel, even though he did not flee immediately. See *Hernandez-Baena*, 417 F.3d at 723; *Boykov,* 109 F.3d at 417. Furthermore, as we have already noted, no evidence supports Patel's speculation that his uncle's death or the fire on his father's farm was related to his political opinion.

Patel also points to the unfulfilled threats as evidence of past experience that tends to show that he is in danger of future persecution. See *Boykov*, 109 F.3d at 416; see also *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) (death threats established a well-founded fear where there was evidence that three others who were similarly threatened were murdered). Patel argues that the threats he received are an objectively reasonable basis for him to fear returning to India. See *Diallo v. Ashcroft*, 381 F.3d 687, 697 (7th Cir. 2004); 8 C.F.R. § 208.13(b)(1). An asylum applicant must "present *specific, detailed* facts showing a good reason to fear that he or she will be singled out for persecution." *Sayaxing v. INS*, 179 F.3d 515, 520 (7th Cir. 1999) (internal quotation marks and citations omitted); see also *Bhatt v. Reno*, 172 F.3d 978, 981 (7th Cir. 1999).

The first problem Patel faces is that he was not able to recall what had been said to him or when the threats were made. His testimony consisted of nothing more than his statement that he was threatened "two or three times" and his speculation that the threats were earnest and that BJP members still hold his campaign activities against him after the passing of five years. Yet he admits that his parents and siblings have not been harmed or further threatened since he left. Second, he has no evidence that supplements his own vague testimony. In order for this court to reverse the IJ's decision we would have to assume, without any evidence in the record, that India's law enforcement authorities are unwilling or unable to protect its citizens from violent BJP members. See *Hernandez-Baena*, 417 F.3d at 724. This we decline to do.

Finally, Patel does not challenge the IJ's finding that he has nothing to fear if he were to return to another part of India. See 8 C.F.R. § 208.13(b)(1)(i)(B); *Giday v. Gonzales*, 434 F.3d 543, 553 (7th Cir. 2006); *Diallo*, 381 F.3d at 697. His dispute was only with those BJP members in the Mahesana district of Gujarat, which is more than

600 kilometers (375 miles) from Bombay (or Mumbai, as it is now called, see the city's website at http://www.mumbainet.com/intro.htm), and he was safely in that city before coming to the United States. The IJ also noted that Patel is Hindu, and thus a member of the majority group in India. At oral argument, Patel's lawyer represented that Patel had been in hiding while he stayed in Bombay, but we see no indication that he raised this point before the IJ or the BIA, and thus we cannot rely on it now. On the record as it stands, substantial evidence supports the IJ's conclusion that Patel would be safe elsewhere in India. For that reason as well as the others, Patel's subjective fear of future persecution is not objectively reasonable.

Last, because Patel has not met the laxer burden of proof required to establish eligibility for political asylum, we have no need to consider his claims for withholding of removal or protection from removal under the Convention Against Torture, under the more stringent standards that apply to those laws. See 8 C.F.R. § 208.16(c)(2); *Iliev v. INS*, 127 F.3d 638, 641 (7th Cir. 1997).

For all these reasons, we DENY the petition for review.