UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2006
Decided November 22, 2006

**Before**

Hon. WILLIAM J. BAUER , *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-4386

| | |
|---|---|
| OMAR A. OROZCO, et al., | Petition for Review of an Order of |
| *Petitioners,* | the Board of Immigration Appeals |
| | |
| *v.* | Nos. A95 592 040 - A95 592 044 |
| | |
| ALBERTO R. GONZALES, Attorney | |
| General of the United States, | |
| *Respondent.* | |

ORDER

Omar Orozco, with his wife and three daughters, petition for review of the Board of Immigration Appeals' decision to deny his application for asylum, withholding of removal, and protection under the Convention Against Torture. Because the IJ's findings that Orozco was incredible and that the incidents he recounted did not rise to the level of persecution are supported by substantial evidence, we deny the petition.

Orozco, a Colombian national, entered the United States on a six-month visa in May 2001. His wife, Josephina Onate, and their three daughters entered the United States also on six-month visas in December 2001. The family remained in the United States past their visas' expirations. In May 2002, Orozco sought

asylum, withholding of removal, and relief under CAT with his wife and daughters as riders on his application. Orozco contends that he was persecuted and will likely face future persecution from the Revolutionary Armed Forces of Colombia (FARC, the "Fuerzas Armadas de Colombia"), a left-wing guerilla group, that targets right-wing groups, politicians, professionals, and landowners. He believes he was targeted on account of both his status as a veterinarian who assists wealthy cattle ranchers in the rural state of Cesar (his wife also owns Santa Rita, one of the largest ranches in Cesar) and his membership in the Liberal Party (one of the two ruling parties in the Colombian government). Since the 1990s, he has attended Liberal Party meetings, hosted one in his home, and often discussed Liberal Party politics with ranchers, encouraging them to vote for Liberal Party candidates.

Orozco testified that he had several threatening encounters with FARC. He testified that: (1) in the 1990s he was stopped a couple of times a year and asked to show his identity papers at illegal FARC checkpoints (roadblocks manned by FARC guerillas) when making his veterinary rounds in Cesar; (2) in 2000 FARC guerillas entered a farm where he was working, would not allow anyone on the farm to leave for several hours, questioned him about his work as a veterinarian, and told him his life would be in danger if he returned to the farm; (3) in February 2001 an unknown man (purportedly a FARC guerila) approached him at Santa Rita and told him that another unknown person wanted to speak to him; and (4) in May 2001, he received two threatening phone calls (also purportedly from FARC). In the first of the two calls, an unidentified man said, "Be careful sapo[*] because we are going to kill you." And two days later, the same male voice called and warned, "Watch it son of a bitch because we are going to kill you." He reported the calls to the police, went to Bogotá for two weeks, and then fled to the United States.

Orozco's wife also testified. She stated that in August of 2001, a worker at Santa Rita told her that several FARC guerillas entered the ranch in the afternoon, asked for Orozco, and then stole hundreds of heads of cattle. Her family sold the ranch out of fear in 2004.

The Immigration Judge denied Orozco's petition for asylum. He found Orozco's claim unconvincing and not credible due to several "material" discrepancies between his affidavit and his oral testimony. For example, the IJ noted Orozco's explanation in his affidavit that, "I often had my Liberal Party card in my wallet and, when [FARC guerillas] saw it, I had to listen to their lectures about why the Liberal Party's ideologies were wrong." But at his removal hearing, Orozco twice denied carrying a Liberal Party card while in Colombia, and admitted

_____

[*]"Sapo" is a pejorative term that literally means frog but is used to describe a collaborator or a snitch.

that the statement in his affidavit was a "confusion." The IJ found that this inconsistency discredited Orozco's assertion that he was persecuted on account of his political opinion. The IJ then found that regardless of Orozco's credibility, the threats and incidences he described were not severe enough to amount to past persecution or support a well-founded fear of future persecution. Nor did Orozco establish, the IJ added, that the threats he received were on account of his membership in a "social group." The IJ concluded that "veterinarians who assist wealthy cattle ranchers" do not qualify as a social group under the Immigration and Nationality Act because they do not share immutable characteristics or characteristics fundamental to their identities.

The BIA issued a short opinion in which it explained that it "affirm[s] the decision of the immigration judge with the exception of her [sic, the IJ Robert Vinikoor, is a "him"] statement regarding the burden of proof." The BIA concluded that the IJ's adverse credibility finding was not clearly erroneous, and that even had Orozco been credible, the unfulfilled threats he recounted failed to constitute past persecution or support a well-founded fear of future persecution.

On appeal, Orozco challenges only the IJ's denial of his petition for asylum; therefore we need not consider whether the IJ properly found him ineligible for withholding of removal or for relief under CAT. *See Wang v. Gonzales,* 445 F.3d 993, 997 (7th Cir. 2006). We review an asylum claim under the deferential "substantial evidence" standard, which means that after considering the record as a whole, if we find "reasonable, substantial, and probative evidence" supporting the IJ's decision, we must affirm. *Feto v. Gonzales,* 433 F.3d 907, 911 (7th Cir. 2006). To reverse, the evidence must compel a different conclusion, *see Prela v. Ashcroft,* 394 F.3d 515, 518 (7th Cir. 2005); a simple difference of opinion will not suffice. *Capric v. Ashcroft,* 355 F.3d 1075, 1086 (7th Cir. 2004).

Orozco argues that the inconsistencies in his testimony that the IJ identified were too minor and immaterial to support an adverse credibility finding. Orozco contends that since the record was replete with evidence of his political activity, the IJ should not have discredited his claim that he was being targeted on account of his political opinion merely because of the "misunderstanding" over the Liberal Party card.

An IJ must support credibility findings with "specific, cogent reasons" that have a "legitimate nexus to the finding." *Giday v. Gonzales,* 434 F.3d 543, 550 (7th Cir. 2006). Minor inconsistencies are not a proper basis for an adverse credibility finding, *Uwase v. Ashcroft,* 349 F.3d 1039, 1043 (7th Cir. 2003); rather, the discrepancies must go to the heart of an applicant's claim. *Giday,* 434 F.3d at 550.

Here the IJ cogently supported his conclusion that the inconsistencies in Orozco's testimony were material to his claims. As the IJ explained, the heart of Orozco's claim hinges on FARC's knowledge of his affiliation with the Liberal Party. But Orozco has not pointed to anything in the record other than his discredited statement regarding his Liberal Party card to show that FARC was even aware of his political opinions. His political activities over the last 15 years were fairly minor; they consisted mostly of informally speaking with farmers to encourage them to vote for the Liberal Party.

Orozco next argues that even if the IJ found this aspect of his testimony not to be credible, other evidence in the record still established that he was persecuted in the past or had a well-founded fear of future persecution. Without elaboration, he insists that the unfulfilled threats he described receiving, coupled with the evidence he submitted demonstrating FARC's sophistication, should have compelled the IJ to conclude that he had been persecuted.

An applicant for asylum bears the burden to establish that he has been persecuted in the past or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); *Sosnovskaia v. Gonzales,* 421 F.3d 589, 593 (7th Cir. 2005). We have repeatedly explained that persecution "must rise above the level of harassment." *Pela v. Ashcroft,* 394 F.3d 515, 518 (7th Cir. 2005); *Nakibuka v. Gonzales,* 421 F.3d 473, 476 (7th Cir. 2005). Although we have not foreclosed the possibility that extraordinary threats—those "of a most immediate and menacing nature"—might in themselves amount to persecution, "in general, unfulfilled threats do not." *Hernandez-Baena v. Gonzales,* 417 F.3d 720, 723 (7th Cir. 2005). The IJ properly concluded that the unfulfilled threats Orozco received were not severe enough to amount to persecution. The threats were few in number, spread out over several years, involved no physical contact, and were never acted upon. In fact, the facts of this case strikingly resemble those in *Hernandez-Baena,* where we recently concluded that verbal "death warrants" from FARC did not amount to persecution. *Hernandez-Baena,* 417 F.2d at 723. Even much more severe conduct has been held not to compel a finding of persecution. *See, e.g., Dandan v. Ashcroft,* 339 F.3d 567, 573-74 (7th Cir. 2003) (detention for three days without food and beatings that caused facial swelling); *Prela,* 394 F.3d at 518 (multiple interrogations by police, detention for twenty-four hours, harassment for money, and beating that injured hands).

And in support of his claim that he established a well-founded fear of future persecution, Orozco offers nothing more than his bare assertion that FARC will continue targeting him if he returns to Colombia. But past conduct that does not constitute persecution cannot form the basis for a well-founded fear of future persecution. *Ciorba v. Ashcroft,* 323 F.3d 539, 545-46 (7th Cir. 2003).

Orozco finally contends that the IJ and the BIA incorrectly concluded that he was not (or will not be) targeted on account of his membership in a "social group." Specifically, he argues that the BIA failed to consider his circumstances in light of *Tapiero de Orejuela v. Gonzales,* 423 F.3d 666 (7th Cir. 2005), where we held that "educated, landowning cattle farmers" constituted a social group being persecuted by FARC. *See id.* at 672. But Orozco failed to establish that the threats he received amounted to persecution or support a well-founded fear of future persecution—regardless of whatever enumerated class he considers himself a part of—and thus we need not consider this argument further. Moreover, *Tapiero de Orejuela* is distinguishable because Orozco himself insisted that he was not targeted on account of his family's status. He stated in his affidavit that "being associated with [his wife's family] was not enough to warrant FARC attention, for none of [her] family ever experienced FARC threats personally."

Orozco's other arguments have been considered but do not require discussion. The petition for review is DENIED.