**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted November 2, 2006[*]
Decided November 27, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 06-1006

| | |
|---|---|
| MIGUEL A. ISAZA and ROCIO DE LAS M. ARROYO-FERNANDEZ, *Petitioners*, | Petition for Review of an Order of the Board of Immigration Appeals |
| v. | Nos. A95-551-333 and A95-551-334 |
| ALBERTO R. GONZALES, Attorney General of the United States, *Respondent*. | |

**O R D E R**

Miguel Isaza, a native of Colombia and naturalized citizen of Venezuela, lawfully entered the United States in November 2001 with his wife Rocio Arroyo, also a Colombian native.  After they overstayed their visas, they requested asylum and withholding of removal on the ground that their support for certain political candidates led them to be persecuted in Colombia by members of the Revolutionary Armed Forces

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

of Colombia (FARC), an insurgent group, and in Venezuela by supporters of President Hugo Chavez, known as Chavistas. They also claimed fear of future persecution if returned to either country. Following a hearing in 2004, an Immigration Judge found the couple removable to Venezuela and denied their applications. The Board of Immigration Appeals summarily affirmed.

Isaza, who returned to Colombia in 1996 after residing in Venezuela for approximately 22 years, testified that he was first threatened by members of FARC when he joined Colombia's Liberal Party and began working on his mother-in-law's ultimately unsuccessful campaign for election to local office. During that campaign he and Arroyo, who also worked on the campaign, received phone calls and letters from people who identified themselves as belonging to FARC. The people demanded that he and Arroyo cease their campaign efforts or face kidnapping and assassination. Fearing harm, they stopped campaigning and moved to a nearby town. But the threats continued, so in May 1999 Isaza and Arroyo moved to Venezuela.

While in Venezuela, Isaza said, he received death threats and a beating from the Chavistas because he supported the Social Christian Party's (COPEI) candidate for local governor. Isaza's first encounter with the Chavistas was at a rally for the gubernatorial candidate, where they threatened him and fellow demonstrators then beat him up. A second encounter occurred as he was leaving work when two unidentified people drove past him firing guns and shouting politically charged epithets.

After approximately four months in Venezuela, Isaza and Arroyo returned to Colombia where, Isaza testified, he again received threats from members of FARC because he would not back a FARC candidate for election. Isaza recounted that while he was teaching at the Universidad Autónoma del Caribe, a student approached him on university grounds, expressed familiarity with "my trajectory," and asked him to attend a meeting. Isaza understood the student's remarks as pressure to endorse a FARC candidate. Later, while driving to work, he was intercepted by FARC members who motioned to him to lower his window, told him that he should support their campaign, and handed him a piece of paper containing the date and place of a meeting. He did not attend. The next day another student came to his office and said: "this was not a game, why had I not gone, that they were not playing." Isaza said he feared that his life was in danger at this point, so he and Arroyo moved to Mexico. But after people who identified themselves as FARC threatened him by phone in Mexico, he and Arroyo came to the United States.

Isaza testified that he fears persecution if returned to either Colombia or Venezuela. If returned to Colombia, Isaza said, he fears that FARC will kill him because of his past membership in the Liberal Party and his mother-in-law's political activities. To illustrate his fears, he explained that Arroyo's cousin was kidnapped in

2003 and that he believed the motivation was political. He conceded, however, that the cousin was released unharmed and that the cousin as well as his mother-in-law still live in Colombia. If returned to Venezuela, Isaza said, he fears that the Chavistas will assassinate him because of his past affiliation with COPEI, and that he might even be targeted by "guerrilla groups like the FARC," which he believes are also active in Venezuela. Arroyo adopted Isaza's testimony.

The IJ credited Isaza's testimony but nevertheless denied the petitioners' applications for asylum. The IJ determined that Isaza failed to establish past persecution because the incidents he described did not constitute persecution. The IJ then concluded that Isaza failed to establish a well-founded fear of future persecution in Colombia because close family members such as his mother-in-law and Arroyo's cousin remained in Colombia unharmed. He also failed to establish a well-founded fear of future persecution in Venezuela because he had not been singled out for persecution there and had freely returned to Venezuela several times following his 1999 departure.

On appeal Isaza and Arroyo first contest this court's "jurisdiction" to review the IJ's decision. They contend that because they now live in California their appeal should be heard by the Ninth Circuit. But 8 U.S.C. § 1252(b)(2) instructs that "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings," and the IJ here completed the removal proceedings in Chicago. Thus venue is proper in this court.

Isaza and Arroyo then challenge the IJ's decision that they failed to establish past persecution or a well-founded fear of future persecution. Where, as here, the BIA adopted the IJ's reasoning without opinion, we review the IJ's decision directly and must uphold that decision unless the petitioners demonstrate that the record not only supports, but compels, reversal. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Galicia v. Gonzales*, 422 F.3d 529, 535 (7th Cir. 2005).

Isaza and Arroyo first argue that they adequately demonstrated past persecution because they "were victims of repeated threats by members of the FARC in Colombia and supporters of the Venezuelan President Chavez." Threats "of a most immediate and menacing nature might" constitute past persecution, *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997), but unfulfilled threats generally do not, *id.; Ahmed v. Ashcroft*, 348 F.3d 611, 616 (7th Cir. 2003). In this case the IJ reasonably concluded that the threats received by Isaza and Arroyo were not sufficiently immediate or menacing to constitute persecution because, even after the couple began receiving threats, they remained in Colombia unharmed for several years and produced no evidence that the perpetrators in either Colombia or Venezuela attempted to follow through on the threats. *See Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005) (petitioner's continuing presence in country seven months after receiving threats

without harm undermined contention that threats were immediate or menacing enough to constitute persecution).

Isaza and Arroyo also point to the beating Isaza received at the political rally in Venezuela and contend that this attack constitutes persecution. But the record supports the IJ's finding that this one incident did not rise to the level of persecution. Even if we assume that the beating was sanctioned by the Chavez government, we have held that a single beating with only minor injuries generally does not constitute persecution. *See Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003) (finding no persecution where petitioner beaten to extent that face became swollen). Here Isaza never specified what injuries he received as a result of the beating but admitted that those injuries were minor. Thus the IJ was entitled to conclude that Isaza did not establish past persecution.

Similarly, the IJ was entitled to conclude that Isaza and Arroyo failed to establish an objectively reasonable fear of future persecution if returned to either Colombia or Venezuela. *See Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005). Isaza and Arroyo contend that their fear of returning to Colombia and Venezuela is objectively reasonable given the threats they received in those countries and the State Department's country reports indicating that the "situation" in both countries has deteriorated. But past conduct that does not constitute persecution cannot form the basis for a well-founded fear of future persecution. *Ciorba v. Ashcroft*, 323 F.3d 539, 545-46 (7th Cir. 2003). Moreover, as the IJ noted, Isaza's mother-in-law and Arroyo's cousin remain in Colombia unharmed, which undermines the couple's claim that their fear of persecution if returned to Colombia is objectively reasonable. *See Toptchev v. INS*, 295 F.3d 714, 722 (7th Cir. 2002). And even though they argue generally that "increasing hostility between the United States and Venezuela" make it "likely" that the Venezuelan government "would not be sympathetic" to people who have sought asylum in the United States, they presented no specific, detailed evidence demonstrating a good reason to fear that they would be subjected to persecution if returned to Venezuela. *See Sayaxing v. INS*, 179 F.3d 515, 520 (7th Cir. 1999).

Thus nothing in the record compels reversal of the IJ's decision to deny asylum. Because Isaza and Arroyo failed to establish their eligibility for asylum, they necessarily cannot meet the higher burden for withholding of removal. *See Dandan*, 339 F.3d at 575 n.7.

DENIED.