# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1964

ABDELHADI HOR,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of a Decision of the
Board of Immigration Appeals

SUBMITTED FEBRUARY 2, 2005—DECIDED MARCH 2, 2005

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* An immigration judge ordered Abdelhadi Hor removed to Algeria. After the Board of Immigration Appeals agreed with that conclusion, Hor filed a petition for judicial review and asked for a stay of removal pending this court's final disposition. The Attorney General contends that we cannot issue such a stay, even if the immigration judge or the Board made a serious error of fact or took an illogical legal turn. Instead, the Attorney General insists, we may grant interim relief only if "the alien shows by clear and convincing evidence that the entry or execution of [the removal] order is prohibited as a matter of law." 8 U.S.C. §1252(f)(2). As a practical matter, removal

is "prohibited by law" only when the person is a citizen of the United States or holds a visa of unquestioned validity. A diplomat, or an alien who prevailed before the Board but was threatened by a rogue subordinate who refused to acknowledge the Board's authority, might be able to show that removal is "prohibited by law." But an alien such as Hor who contends only that the immigration judge's conclusion is unsupported by substantial evidence will be unable to demonstrate "by clear and convincing evidence that the entry or execution of [the removal] order is prohibited as a matter of law" and thus would have no hope of a stay if §1252(f)(2) applies to requests for stays. One court of appeals holds that it does. *Weng v. Attorney General*, 287 F.3d 1335 (11th Cir. 2002). Five hold that it does not. *Arevalo v. Ashcroft*, 344 F.3d 1, 6-9 (1st Cir. 2003); *Mohammed v. Reno*, 309 F.3d 95, 98-100 (2d Cir. 2002); *Douglas v. Ashcroft*, 374 F.3d 230, 233-34 (3d Cir. 2004); *Bejjani v. INS*, 271 F.3d 670, 688-89 (6th Cir. 2001); *Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001) (en banc). We have yet to consider this question and must choose sides.

Subsection (f), captioned "Limit on injunctive relief", reads:

> (1) Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

> (2) Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant

> to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

Like the Norris-LaGuardia Act, this enactment curtails resort to a particular remedy—the injunction. Subsection (f)(1) forbids injunctive class actions, and subsection (f)(2) sets a high standard for injunctive relief at retail. This makes a good deal of sense as long as removal orders may be reviewed in other ways. Section 1252(c)-(e) authorizes this court to review orders rejecting claims of the kind that Hor has made. And *INS v. St. Cyr*, 533 U.S. 289 (2001), holds that the writ of habeas corpus is available in exceptional circumstances. If a court of appeals concludes that a particular removal order is proper, there will be scant justification for injunction; if the alien fails to file a timely petition for review, an injunction designed to overcome that omission is not justifiable; if Congress has forbidden judicial review in the court of appeals (as it has with respect to criminal aliens and some discretionary remedies), an injunction would require extraordinary justification.

This understanding supposes, however, that the Board's order of removal is subject to *effective* review. Before 1996, when the Illegal Immigration Reform and Immigrant Responsibility Act revamped the process, a stay of removal (then called deportation) pending judicial review was automatic. The IIRIRA flipped the presumption and made a stay the exception rather than the rule: "Service of the petition . . . does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. §1252(b)(3)(B). It would have been easy to write something like: "Service of the petition . . . does not stay the removal of an alien pending the court's decision on the petition, unless the court determines that the standards for an injunction under subsection (f)(2)

have been satisfied." But that's not what it says. Subsection (b)(3)(B) speaks of stays, while subsection (f) deals with injunctions.

The Attorney General wants us to treat "stays" as a subset of "injunctions." Certainly there is a functional overlap: a stay, like an injunction, can stop an agency in its tracks, and courts accordingly require the same kind of showing for a stay of an agency's order as for an interlocutory injunction. See *Sofinet v. INS*, 188 F.3d 703, 706 (7th Cir. 1999). But the words nonetheless cover different domains. An "injunction" is an order issued as the relief in independent litigation, while a "stay" is an order integral to a system of judicial review: an appellate court may stay a district judge's order, or its own mandate, or an agency's decision when the agency plays the role of the district court and the initial judicial tribunal is a court of appeals. See *Illinois Bell Telephone Co. v. WorldCom Technologies, Inc.*, 157 F.3d 500, 503 (7th Cir. 1998). Perhaps the distinction between injunctions and stays rests more on history than on function—especially when the stay's addressee is an agency rather than another judge. Still, it *is* a long-standing distinction, reflected not only in 8 U.S.C. §1252 but also in Fed. R. App. P. 18 and 28 U.S.C. §2349, which govern the issuance of "stays" pending appellate review of federal agencies' decisions.

Congress could limit our authority to issue stays, just as it has limited district judges' authority to issue injunctions. But treating a rule addressed to "injunctions" as covering "stays" would impoverish the language and make the legislative task more difficult. Our legal vocabulary contains distinct words for distinctive judicial actions. Keeping them separate makes it easy to address one, both, or neither, in a statute such as the IIRIRA. By contrast, treating a subsection that mentions injunctions but not stays as covering both would force Congress to add provisos each time it sought to regulate one but not the

other. Once a legal community develops a stable nomenclature, it is best to apply it mechanically so that no one is taken unawares, and so that drafting can be uncluttered by provisos. See *Morrissette v. United States*, 342 U.S. 246, 263 (1952); *Continental Can Co. v. Chicago Truck Drivers Pension Fund*, 916 F.2d 1154, 1158 (7th Cir. 1990); *Country Mutual Insurance Co. v. American Farm Bureau Federation*, 876 F.2d 599, 600 (7th Cir. 1989).

This is not to say that the people who wrote and voted for subsection (f) necessarily recognized that stays differ from injunctions. Courts often say that Congress understands and legislates against the background of established law, e.g., *Haig v. Agee*, 453 U.S. 280, 297 (1981); *Cannon v. University of Chicago*, 441 U.S. 677, 699 (1979), but this is a legal fiction. It would be better to say that courts proceed *as if* the legislature had such an understanding, because then there will be no surprises when the legislature does its homework. Persons who draft legal texts can supply legislators with reliable advice about what the texts will do if enacted. As the Supreme Court remarked recently, applying established legal distinctions gives Congress a formulary: it can achieve one result by using a particular word or phrase, a different result with a different phrase. *Whitfield v. United States*, 125 S. Ct. 687, 692 (2005). Courts (and lawyers) will be spared difficult and expensive tours through the legislative history and can avoid the impossible task of trying to guess what Members of Congress may have "had in mind" or "intended" about language that they probably did not read in the first place.

Nothing in §1252, or anywhere else in the IIRIRA, defines "injunction" to include "stay." Subsection (b)(3)(B) implies that the two differ. Title 8 as a whole refers to "stay" 14 times (in the current sense as opposed to "overstay a visa" and the like) and "enjoin" or "injunction" a total of 7 times; these words are not treated as coterminous in any provision. Nor is it jarring to recognize a difference in applica-

tion; for reasons we have mentioned, limits on injunctive relief are more sensible when an alien has had an opportunity for effectual judicial review before removal. Although the IIRIRA allows a petition to continue even after the alien's departure—an alien may return if he prevails in this court, see *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 651-54 (7th Cir. 2004); *Rife v. Ashcroft*, 374 F.3d 606, 615 (8th Cir. 2004)—and thus makes stays less important than they were before 1996, they may remain vital when the alien seeks asylum or contends that he would be subject to torture if returned. The ability to come back to the United States would not be worth much if the alien has been maimed or murdered in the interim. Yet under the Attorney General's reading of §1252(f)(2) an alien who is likely to prevail in this court, and likely to face serious injury or death if removed, is not entitled to remain in this nation while the court resolves the dispute. There's nothing absurd about reading §1252(b)(3)(B) to permit courts to avert such harms. So we join the majority of other circuits in holding that §1252(f)(2) does not affect applications for stays of removal pending review of the Board's decisions.

Although this makes Hor eligible for consideration under the traditional equitable standards, he is not entitled to relief. The harm he professes to fear is great indeed, but his probability of success on the merits is low. Hor testified that until leaving Algeria in 2000 he was the political committee secretary of its ruling party, the National Liberation Front. Twice, Hor contends, he had been assailed by revolutionaries affiliated with the Armed Islamic Group or GIA who threatened him with death unless he would betray the government and provide information to assist the rebels. The immigration judge did not believe him; the Board of Immigration Appeals added that even if all of his testimony is truthful he is not entitled to remain in the United States. This latter conclusion, which Hor's motion slights, makes his position untenable.

By Hor's own account he escaped and never received a scratch; the second time, the government's forces killed two of the three terrorists who had threatened him and captured the third. He says that the GIA would make new attempts on his life if he were to return (though by now his information must be stale), but a threat posed by an armed insurgency is not "persecution." Persecution is something a *government* does, either directly or by abetting (and thus becoming responsible for) private discrimination by throwing in its lot with the deeds or by providing protection so ineffectual that it becomes a sensible inference that the government sponsors the misconduct. See 8 U.S.C. §1101(a)(42)(A); *Balogun v. Ashcroft*, 374 F.3d 492, 499 & n.8 (7th Cir. 2004). The government of Algeria is trying to thwart the GIA, and Hor is aligned with the government. He is accordingly not a victim of persecution. That the rebels abhor his political allegiance is irrelevant. Like many other citizens of Algeria, he would prefer to be far away from violent strife, but guerrilla conflicts and even civil wars do not require immigration officials to grant asylum to either side's combatants or supporters. See *INS v. Elias-Zacarias*, 502 U.S. 478, 482-84 (1992); *Ahmed v. Ashcroft*, 348 F.3d 611, 619 (7th Cir. 2003) (sustaining an order removing to Algeria a former security officer who contended that he would be targeted by rebels).

The interim stay is dissolved, and the application for a stay of removal is denied.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*