**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 15, 2005
Decided October 20, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 04-2661

| | |
|---|---|
| JANNA TCHOUKREEVA, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals |
| *v.* | No.  A74-417-769 |
| ALBERTO R. GONZALES, *Respondent*. | |

**O R D E R**

Janna Tchoukreeva entered the United States illegally in 1996, one year after her father, Valerii Tchoukreev; both fled alleged persecution in Kazakhstan.[1] Initially, Janna's application in this country was again derivative of Valerii's, but at the hearing before the immigration judge (IJ) on their joint application, she elected to apply separately on the belief that having turned 21 she could no longer be a derivative applicant.  Her application references her father's application, and makes no additional claims.  Valerii gave nearly all of the testimony before the IJ, including that relevant to his daughter's application.

---

[1] The Tchoukreevs share the same surname, but Janna uses the feminine form of the name.

At the joint hearing Valerii testified that he is an ethnic Tatar, while his wife is ethnically Russian. Valerii testified that the series of abusive incidents that prompted him to flee began in June 1995. While traveling in Kazakhstan with his family, he said, he stopped at a rest stop for something to drink. Five Kazakh men approached him and demanded that he purchase cigarettes for them. When Valerii refused, they shouted anti-Russian slurs and assaulting him, breaking one of his fingers and injuring his head before a police vehicle arrived. Two of the five assailants were taken into custody and detained at the police station, but only for questioning.

Valerii made an official complaint, but the other three assailants were not taken into custody. The two assailants who had been taken into custody were released, for lack of evidence, by September, and began threatening Valerii over the telephone. The callers identified themselves as members of the Kazakh nationalist Azat Party. Valerii contacted the officer in charge of his assault complaint, who suggested that it was a "personal problem" that Valerii should handle it himself. When Valerii persisted, the same officer told him "that no Russian has the right to teach the Kazakh Militia how to work." The threats continued, as callers insisted that he drop the complaint against his assailants and leave Kazakhstan.

In September of 1995, Janna was attacked while returning home from a sporting event. Valerii testified that Janna's clothes were torn during the attack and that it "was a miracle she was not raped, that she was able to escape and run away." Janna testified that her attackers shouted that she should tell her father "that things are going to get even worse." Valerii did not report the incident to the police. Yet, despite daily telephone threats and the vandalization of his vehicle, he did not drop the complaint he had filed after the original assault.

In early October, the attacks escalated when a group of men entered Valerii's apartment, vandalized it, and detained him there. The assailants threatened to kill Valerii if he reported the break-in to the police, and demanded that he drop his original complaint. This incident convinced Valerii to do so. Five days after the break-in, before Valerii withdrew his complaint, his assailants took action against him. Valerii testified that, while he was riding a bicycle to work, a van struck him and threw him into an embankment. The occupants of the van, including one of the men who had broken into his apartment, seized him and took him to a location he could not identify. They repeated the demand that he withdraw his complaint and then they beat him. The kidnappers also warned him to leave Kazakhstan within a year "or they would kill me and my family." After being held for "a day, or I think a night," his attackers drove him to the police station, where he submitted a written request that the investigation into the June 1995 incident be abandoned. Valerii and his family sold their apartment and moved to live with his mother while he prepared to seek refuge abroad. During this period, telephone threats and harassment continued, even after Valerii's family moved in with his mother; callers

told his mother they would burn her apartment.  On December 11, 1995, Valerii fled Kazakhstan.

Several months after Valerii departed, Janna and her mother were attacked in a marketplace, and Janna received cranial injuries and a concussion.  The details are uncertain because at the hearing the court temporarily turned off the recording device.  Apparently, though, Valerii conceded that the attack was not related to his troubles with the Azat nationalists, and characterized it as general hostility towards ethnically Russian Kazakhstanis.  The record does not indicate that the Tchoukreevs reported this incident to the police.

After the close of testimony, the IJ issued a single order denying both applications.  The IJ found both Valerii and Janna credible, but noted that the attacks on them did not constitute past persecution because they were not "perpetrated by state agents nor by an organization that the state is unwilling or unable to control."  The IJ distinguished between ethnic persecution and ethnic discrimination, and concluded that Valerii and Janna suffered only discrimination.  According to the opinion, neither "the private discrimination suffered by the respondents, nor the low-level official discrimination exemplified by the police's unenthusiastic investigation in to Valerii's beating, amount to 'persecution.'"

In June 2004, the Board of Immigration Appeals (BIA) affirmed in separate *per curiam* orders for Valerii and Janna.  Because the BIA adopted the IJ's opinion, this court reviews both.  *See Ursachi v.  I.N.S.,* 296 F.3d 592, 594 (7th Cir.  2002); *Pop v.  INS*, 270 F.3d 527, 529 (7th Cir.2001).  Janna must show a well-founded fear of future persecution if she is returned to Kazakhstan, although she can establish a rebuttable presumption of future persecution if she can show that she suffered persecution in the past.  8 C.F.R.  § 208.13(b).

Janna argues that she suffered past persecution as a consequence of the harassment campaign waged against her father.  This campaign consisted of abusive telephone calls, vandalism of the family vehicle, and physical violence directed against her father.  Janna suffered direct physical violence related to these events only once, when she was seized by assailants in an attempt to coerce her father into dropping his police complaint.  She also suffered another beating at the marketplace, although she concedes that this was unrelated to her father's complaint to the local police.  Janna does not contend that the assailants in either incident were agents of the state.

Persecution "is something a government does, either directly or by abetting (and thus becoming responsible for) private discrimination by throwing in its lot with the deeds or by providing protection so ineffectual that it becomes a sensible inference that the government sponsors the misconduct."  *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005).  Simple discrimination, however, is not persecution;

neither "a pattern of private discrimination or of low-level, ad hoc, official discrimination" will support a claim for asylum. *Bucur v. I.N.S.*, 109 F.3d 399, 403 (7th Cir. 1997). In order to constitute persecution, Janna needed to show that the government of Kazakhstan was unable or unwilling to control the violence directed against her family. *See Guchshenkov v. Ashcroft,* 366 F.3d 554, 559 (7th Cir. 2004); *Bace v. Ashcroft*, 352 F.3d 1133, 1138-39 (7th Cir.2003).

Janna's only evidence on this point is the apparently lackadaisical efforts of law enforcement to prosecute her father's original attackers. That the Kazakh nationalists were intent on forcing Valerii to drop his police complaint, however, suggests that the government was both able and willing to do something about his situation. Since Valerii did drop his complaint, it is impossible to say whether the police would have pursued their investigation, so there is no evidence that authorities were indifferent to her plight. While Valerii's testimony suggests that the authorities were reluctant to take action on his complaint, Janna has not shown that they were completely unwilling or unable to assist her.

Since Janna's claimed fear of future persecution rests entirely on her claim of past persecution, the above analysis of past events in Kazakhstan is dispositive. "The BIA's findings will be rejected only if the evidence is so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Awad*, 328 F.3d at 341 (citation omitted). A reasonable factfinder could conclude, as the IJ did, that Janna does not fear future persecution. The petition for review is DENIED.