UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 4, 2006
Decided May 18, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-1961

| | |
|---|---|
| RAMADAN ADEMI, et al., | Petition for Review of an Order of |
| *Petitioners*, | the Board of Immigration Appeals |
| | |
| v. | Nos. A77-929-719 |
| | A77-929-718 |
| ALBERTO R. GONZALES, | A77-929-717 |
| *Respondent*. | A77-929-716 |

**ORDER**

Ramadan Ademi, a citizen of the Republic of Macedonia, used a fraudulent passport to reach the United States in March 2001 with his wife and two children. He was detained upon arrival and requested asylum, claiming that he had been targeted for recruitment by a rebel group fighting the ruling government. Ademi's family sought asylum derivatively, and all four were paroled into the United States. An immigration judge ("IJ") later concluded after a removal hearing that Ademi was ineligible for asylum because he failed to establish either past persecution or a well-founded fear of future persecution. The Board of Immigration Appeals affirmed, and Ademi now petitions for review.

In February 2001 the National Liberation Army ("NLA"), an ethnic-Albanian insurgent group, rebelled against the ruling government of Macedonia and nearly precipitated a civil war between the country's Albanian minority and its

ethnic-Macedonian majority.  In August of that year, however, the NLA settled its differences with the government and by the end of the year had voluntarily disarmed and disbanded.  U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, *Macedonia: Country Reports on Human Rights Practices - 2001* (Mar. 2002).

At his removal hearing in 2004, Ademi testified that he is an ethnic-Albanian who lived with his family in Tetovo, Macedonia, without incident until March 21, 2001, when masked gunmen knocked on his door in the middle of the night and demanded that he either "join their forces" or pay $20,000.  He told them "there was no problem," and they left without harming him.  Although he did not recognize the individuals because they were disguised, he said he later heard a rumor that they were from the NLA.  Ademi then talked to his wife about the visitors' demands, and they decided to leave Macedonia.  Ademi testified that, from his perspective, staying put meant paying off the NLA with money he did not have or joining the group and getting killed in the war.  He could not go to the police, he said, because "it was impossible to contact" them.  And, he added, he was convinced his family would not be safe anywhere in Macedonia because the conflict was spreading throughout the country.  So the next day he took his family to Struga, a city approximately two hours from Tetovo, where they stayed for a few days to acquire travel documents.  They then left Macedonia and traveled to the United States via Bulgaria, Switzerland, and Brazil.

Ademi testified that he fears the NLA will torture and kill him if he returns to Macedonia.  He explained that within a week after he left Tetovo his neighbor, Meqail Berzati, a high-ranking member of the NLA, had been murdered.  Macedonian police were rumored to be responsible, Ademi continued, but his brother-in-law, who lives in Macedonia, told him that the NLA had labeled him a traitor because the group believed he gave police information linking Berzati to the group.  Ademi initially testified that his brother-in-law also told him there was an outstanding arrest warrant for him, but when the IJ expressed skepticism, Ademi admitted there was no warrant and explained that he really meant "people very often are asking about my whereabouts."  Ademi submitted an undated statement from his brother-in-law purporting to support his contention that the NLA was looking for him in connection with Berzati's murder.  But, as the IJ noted, the statement says only that "unidentified people" who the brother-in-law refused to name were looking for Ademi.

The IJ denied Ademi's application for asylum.  The IJ credited Ademi's testimony concerning events prior to his leaving Tetovo but nevertheless concluded that he failed to establish past persecution.  The IJ reasoned that the NLA approached Ademi, not because of any reason that might give rise to a claim for asylum, but because Ademi is Albanian and the NLA expected him to assist—either

through combat or money—with its fight against the Macedonian government. The IJ then explained that he had "difficulty" accepting at true Ademi's testimony regarding his purported fear of future persecution because Ademi's fears were based upon "rumors." The Board of Immigration Appeals adopted the IJ's decision without opinion, so we review the IJ's decision directly. *Galicia v. Gonazles*, 422 F.3d 529, 535 (7th Cir. 2005).

To qualify for asylum Ademi was required to show that he is a refugee under 8 U.S.C. § 1101(a)(42)(A). *See Musabelliu v. Gonzales*, 442 F.3d 991, 994 (7th Cir. 2006). A refugee is a person who is "unable or unwilling to return to [his home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Gjerazi v. Gonzales*, 435 F.3d 800, 807-08 (7th Cir. 2006).

Ademi first challenges the IJ's determination that he failed to establish past persecution. He contends that the NLA targeted him for recruitment based on what he characterizes as imputed political opinion, arguing that the NLA initially approached him because it assumed that as an ethnic-Albanian he supported the rebellion. And since he could not afford to buy his way out of conscription, he reasons, he would have sustained harm by remaining in Macedonia: if he joined the NLA, he would have been killed or wounded; if he refused, he "would no doubt have suffered recriminations at their hands" because "he wanted to remain neutral." Moreover, he says, joining the NLA would have made him "an outlaw and terrorist in the eyes of the ruling Macedonian government."

The NLA's demand that Ademi either "join their forces" or buy them off did not constitute persecution on account of an imputed political opinion. Although, as Ademi acknowledges, the NLA presumably tried to recruit him because the rebels believed that all ethnic-Albanians should be willing to help them, the Supreme Court held in *INS v. Elias-Zacarias,* 502 U.S. 478, 482 (1992), that guerilla insurgencies do not act on account of an imputed political opinion when they seek to recruit new members by force. And Ademi expressed to the NLA no reason for not joining their ranks. Thus any retribution he feared for refusing the NLA's demands could not be attributed to his political opinion. *See id.* (explaining that "even a person who supports a guerrilla movement might resist recruitment for a variety of reasons," including fear of combat or retribution by the government, that have nothing to do with his political opinion). Moreover, threats by an insurgent group are not persecution because "[p]ersecution is something a *government* does." *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005) (emphasis in original); *see Orejuela v. Gonzales*, 423 F.3d 666, 674 (7th Cir. 2005); *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723-24 (7th Cir. 2005). The ruling Macedonian government was fighting the NLA, not encouraging the insurgency. While Ademi understandably wanted to distance himself and his family from the escalating violence in Macedonia, this

desire is not a basis for seeking asylum. *See Hor*, 400 F.3d at 486 (explaining that immigration officials are not required to grant asylum to applicants who merely wish to escape the violence of civil conflicts).

Ademi next insists that the IJ found his testimony concerning the NLA's search for him in connection with Berzati's murder credible and therefore that testimony alone was sufficient to established a well-founded fear of future persecution. Because Ademi failed to establish past persecution, he does not gain the presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b); *Tolosa v. Aschcroft*, 384 F.3d 906, 908 (7th Cir. 2004). Thus he was required to prove based on credible, direct, and specific evidence that he genuinely fears persecution on account of his political opinion if returned to Macedonia, and that his fear is reasonable. *See Hernandez-Baena*, 417 F.3d at 723.

Ademi's claim of a well-founded fear of future persecution fails for the same reason his claim of past persecution fails: he failed to establish that he fears future persecution *by the Macedonian government. See Hor*, 400 F.3d at 485. Although Ademi contends that the NLA "now has a degree of political power" that will allow it a greater opportunity to retaliate against him for his alleged involvement in Berzati's death, nothing in the record supports this contention. In fact, recent country reports reveal that Macedonia is governed by a coalition composed of the Albanian Democratic Union for Integration (DUI) and the Liberal-Democratic (LDP) parties, but the reports contain no indication that the NLA has reformed under a new name. *See* U.S. Dep't of State, Bureau of European and Eurasian Affairs, *Background Note: Macedonia* (Nov. 2005); U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, *Macedonia: Country Reports on Human Rights Practices - 2005* (Mar. 2006).[1] The reports also reveal that there were "no reports that the government or its agents committed arbitrary or unlawful killings" and "no reports of politically motivated disappearance." U.S. Dep't of State, *Macedonia Country Reports on Human Rights Practices, supra.*

Moreover, the IJ was not required to find Ademi's testimony, based solely on hearsay, sufficient to satisfy his burden of proof. *See Sosnovskaia v. Gonzales*, 421 F.3d 589, 593 (7th Cir. 2005) (instructing that an applicant for asylum bears the burden of proving his claim by a preponderance of the evidence). The IJ explained that Ademi's claim that the NLA was looking for him in connection with Berzati's murder was unpersuasive because it was, by Ademi's own admission, based upon "rumor." The IJ, therefore, was entitled to disregard it. *See Payne v. Pauley*, 337

---

[1]This court may take judicial notice of country conditions documented in State Department reports not considered by the IJ. *See Balogun v. Ashcroft*, 374 F.3d 492, 506-07 (7th Cir. 2004).

F.3d 767, 772 (7th Cir. 2003) (explaining that "speculations, hunches, intuitions, or rumors about matters remote from [personal] experience" do not constitute evidence) (quotations and citations omitted). And Ademi produced nothing more to support his claim; the statement from his brother-in-law that Ademi claimed supported his story contained no reference to Berzati's murder, the NLA, or Ademi's relation to either.

Thus nothing in the record compels reversal of the IJ's decision. Ademi's petition for review is DENIED.