NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued February 27, 2007
Decided March 13, 2007

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2119

| | |
|---|---|
| GEORGE M. VARGHESE, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals |
| *v.* | No. A78 588 463 |
| ALBERTO R. GONZALES, *Respondent*. | |

**ORDER**

George Varghese, a national of India, applied for asylum, withholding of removal, and relief under the Convention against Torture (CAT) based on his Catholic faith.  The Immigration Judge (IJ) denied his applications after concluding that Varghese failed to show that the Indian government condoned or was unwilling to control the private discrimination he faced in the past, and that he could avoid future persecution by moving back to Kerla, India, a province where he once resided safely.  The Board of Immigration Appeals (BIA) affirmed.  Because substantial evidence supports this decision, we deny Varghese's petition for review.

Varghese entered the United States as a visitor in October 1999, but exactly one year later he filed a *pro se* application for asylum recounting hardships he faced as a Catholic in India, a predominately Hindu country. His problems allegedly began in 1980 when he was visiting his grandfather and "people in and around the area" dismantled one of his grandfather's buildings as a warning against the family's religious activities. When Varghese tried to intervene, the people pushed and threatened him. Varghese did not provide any description of the attackers in his asylum application, or say whether his family contacted the police, or even disclose where his grandfather lived. After a long period of calm, his problems resumed in April 1999. At that time he was traveling by train from his home in Kerla to Calcutta when "Hindu fanatics" attacked him and stole all his "personal records." Again he did not say in his asylum application whether he contacted the police, but he did explain that after this incident he stayed in a guest house where police interrogated him. Varghese attached various supporting documents to his asylum application, including an affidavit from church officials in India describing him as a "religious activist" who was an elected member of the diocese's pastoral council from 1978 to 1982.

In August 2002 an asylum officer interviewed Varghese and referred his case to an IJ. Before his merits hearing Varghese retained counsel and filed additional documents supporting his asylum application. These documents included an affidavit from Varghese recounting the problems he faced in India. In that affidavit, he explained that a group of Hindu men destroyed his grandfather's building, which was used as a community meeting place for prayer. Apparently this incident spurred Varghese to "convince others of the righteous path to salvation." He also explained that the beating he received on the train to Calcutta resulted in a broken tooth and a bloody lip, and that he reported the incident to the police who refused to take his complaint. Regarding his stay at the guest house, Varghese added to his earlier account that Hindu militants slapped him repeatedly for distributing flyers urging Hindu readers to learn more about Jesus, and that the police became involved only after the manager of the guest house called them to respond to the violence. Varghese did not repeat his previous allegation that the police interrogated him; this time he said that they threatened to beat him if he continued proselytizing. Just a month after these attacks, Varghese recounted, he received threatening phone calls at his home from people he believed to be members of the RSS, a militant Hindu group. Varghese, though, did not explain why he thought these callers were members of the RSS. He ended the affidavit by stating that his wife, who remains in India with their two children and works as a Catechism teacher, has received threatening phone calls and since his departure has been visited twice by men demanding to know his whereabouts. Varghese also submitted an affidavit from his wife attesting that she received these threats. Lastly, he submitted several articles describing attacks on Christians in India, including a Department of State report from 2003 disclosing that, although the

central government generally protected religious freedom, "it sometimes did not act effectively to counter societal attacks against religious minorities and attempts by state and local governments to limit religious freedom."

Varghese's testimony generally corroborated his submissions, but he gave conflicting testimony regarding his interactions with the police, testifying first that he did not report the attack on the train to police and later stating that he did. With regard to the guest-house incident, Varghese confirmed that the manager of the hotel had called the police, but emphasized that the police did "nothing." He did not testify that the police interrogated him or threatened him. Varghese also described his attackers and those who threatened him as "Hindu militants," or "Hindu people," but he did not say that any of them had ties to the Indian government. On cross-examination, Varghese explained that Calcutta is a 36-hour train ride from his home in Kerla.

For its part the government submitted the Department of State's International Religious Freedom Report for 2004 on India. This report acknowledges that some state and local governments did not adequately protect religious minorities. But the report also notes important improvements, including an April 2003 decision by the Indian supreme court ordering a retrial of several acquitted Hindu extremists who allegedly killed 14 Muslims when a mob attacked a local bakery. And although some states have laws penalizing proselytizing, no such law existed on a national level or in Kerla. The report also notes that in May 2004 a new coalition government replaced the BJP, the Hindu nationalist party that had been in power since 1998. According to the Department of State, the BJP had links with Hindu extremist groups implicated in violent acts against Christians, and some BJP officials also had been members of the RSS, although the BJP was an independent political party which officially acknowledged the rights of religious minorities. On the other hand, according to the 2004 report, the new coalition government has pledged "to pay particular attention to the rights of religious minorities," and is led by three religious minorities, a Sikh prime minister, a Muslim president, and a Christian president of the governing party.

After reviewing the submissions and listening to the testimony, the IJ found Varghese's testimony credible and resolved his conflicting testimony about police involvement by concluding that Varghese reported the incident on the train but never saw results from the report. Ultimately, the IJ denied Varghese's asylum application, concluding first that he did not prove past persecution. The IJ noted that Varghese had no "real proof" that the individuals who attacked him were affiliated with the government and that his "one attempt" to seek police help did not mean that the government condoned or was helpless to stop the violence. While acknowledging that Varghese might genuinely fear returning to India, the IJ nonetheless determined that this fear was not objectively reasonable. The IJ

likewise held that Varghese failed to meet his burden for proving eligibility for withholding of removal and relief under the CAT.

The BIA adopted and affirmed the IJ's decision.  Assuming Varghese's credibility, it concluded that he failed to establish persecution because many locales in India have Christian majorities, he experienced no attacks anywhere close to his home, and he submitted no evidence that the individuals who caused him a "few difficulties" are part of a nationwide threat.

Varghese now contends that the record compels us to conclude that he experienced past persecution.  Specifically, he argues that the beatings he faced at the hands of Hindu extremists on the train to Calcutta and at the guest house, along with the threats his wife has received at their home in Kerla, were severe enough to rise to the level of persecution.  Since the BIA's order merely supplements the IJ's decision, that decision, as supplemented, is the basis for our review.  *See Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005).  We review the IJ's decision under the deferential substantial-evidence standard, and can reverse only if the evidence compels a different result.  *See id.*  The Attorney General and the Secretary of Homeland Security have discretion to grant asylum to an alien who proves he is unwilling to return to his home country because he has faced persecution in the past or has a well-founded fear of future persecution on account of his religion.  *See* 8 U.S.C. §§ 1158(b)(1)(B)(i); 1101(a)(42)(A); *Gomes v. Gonzales*, 473 F.3d 746, 753 (7th Cir. 2007).

The IJ concluded that the attacks never amounted to persecution, not because the harm was mild, but because the perpetrators were non-governmental actors and the Indian government neither condoned their behavior nor was unwilling to protect Varghese.  Ample evidence supports this conclusion.  We have reasoned that "[p]ersecution is something a *government* does, either directly or by abetting (and thus becoming responsible for) private discrimination." *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005) (emphasis in original).  A government abets private discrimination only if it "is unwilling and completely unable to afford protection." *Margos v. Gonzales*, 443 F.3d 593, 599 (7th Cir. 2006).

In the immigration courts, Varghese never tried to establish that the various people who destroyed his grandfather's building, attacked him on the train to Calcutta, and attacked him at the guest house were affiliated with the government; he described them only as Hindu militants.  The same is true about the callers who made the telephone threats.  Varghese described them as members of the RSS, but he made no effort to link them with the government.  This evidence does not compel a finding that Varghese's attackers were actors working for, or with the tacit approval of, the government, rather than thugs who found his religion offensive. Nor does Varghese's one failed attempt to report the train incident to the police

compel a finding that the Indian government is unwilling and completely unable to protect him. Even under BJP rule, the Indian government expressed a commitment to protecting the rights of religious minorities. Although the police apparently threatened Varghese following the incident at the guest house, this unfulfilled threat of vague harm does not compel a finding of past persecution. *See Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006) ("In the majority of cases, however, threats in and of themselves will not compel a finding of past persecution."); *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005); *Prela*, 394 F.3d at 518 (concluding that repeated interrogation by police, 24-hour detention, and injury to hands does not compel finding of past persecution).

Varghese also contests the IJ's conclusion that he failed to establish a well-founded fear of future persecution since he could safely return to Kerla. He maintains that the IJ failed to consider that his proselytizing activities place him at a heightened risk of persecution and that the threat to Christian proselytizers exists throughout all of India. Varghese could prove his eligibility for asylum by demonstrating that he has a well-founded fear of future persecution in India. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i); 1101(a)(42)(A). To establish a well-founded fear of persecution, an alien must demonstrate that he genuinely fears persecution on account of his religion and that this fear is objectively reasonable. *See Prela*, 394 F.3d at 519. The IJ did not doubt the sincerity of Varghese's fear, but found it objectively unreasonable. To demonstrate that his fear is objectively reasonable, Varghese had to show "'specific, detailed facts supporting the reasonableness of [his] fear that [he] will be singled out for persecution.'" *Bhatt v. Reno*, 172 F.3d 978, 982 (7th Cir. 1999) (quoting *Bevc v. INS,* 47 F.3d 907, 910 (7th Cir. 1995)) (holding that Indian applicant's testimony of beatings and threats by Hindu radicals is "too vague, speculative, and insubstantial to establish either past or future persecution"). What's more, an applicant "does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country." 8 C.F.R. § 208.13(b)(2)(C)(ii); *see also Ahmed v. Gonzales*, 467 F.3d 669, 675-76 (7th Cir. 2006).

Substantial evidence supports the IJ's conclusion that Varghese failed to prove that his fear of persecution throughout all of India is objectively reasonable. The IJ acknowledged that Christians face attacks in India but concluded, citing the Department of State reports, that the record demonstrates that the risk is reduced in certain provinces. Varghese's own experience suggests that he would be safe among the concentration of Christians found in his home state of Kerla, which has no anti-conversion laws. Hindu extremists never attacked Varghese while he was in Kerla, and though he and his family received threats there, unfulfilled threats from non-governmental actors do not rise to the level of persecution. *See Mitev v. INS* , 67 F.3d 1325, 1328, 1332 (7th Cir. 1995) (concluding that threats of death camps and jail from private individuals does not amount to persecution). Moreover,

the new central government has pledged to protect the rights of religious minorities and has made significant strides to this end. Diplomatic observers estimated that (in a country of approximately 1 billion people and 23 million Christians) 30 attacks against the Christian community occurred from 2003 to 2004, less than half the number estimated for the previous year. And the most recent Department of State report about religious freedom in India notes continued progress and states that "the vast majority of Indians of every religious faith lived in peaceful coexistence." DEPARTMENT OF STATE, INDIA: INTERNATIONAL RELIGIOUS FREEDOM REPORT (2006), *available at* http://www.state.gov/g/drl/rls/irf/2006/71440.htm (last visited March 5, 2007). The Indian supreme court also has signaled that it will not tolerate lax enforcement by local governments by ordering new trials following the acquittals of Hindu extremists for the deaths of 14 Muslims killed during rioting. Varghese bore the burden of proving that his fear of persecution was well-founded, and to meet that burden he was required to demonstrate an objectively reasonable fear throughout all of India. *Prela*, 394 F.3d at 518, *Ahmed*, 467 F.3d at 675-676. And because Varghese has the burden of proof, unlike the situation in a fairly similar case decided today (*Das v. Gonzales*, No. 06-2692) where that burden[1] was on the government, his task is very difficult indeed. We have reviewed the record, and after that review, we conclude that it contains nothing which compels us to disturb the IJ's conclusion that Varghese failed to meet this burden.

Likewise, the IJ's decision to deny Varghese's application for withholding of removal is also supported by substantial evidence. To be eligible for withholding of removal the applicant "bears the burden of demonstrating that loss of life or freedom is more likely than not" if he returns to his home country. *Kobugabe v. Gonzales*, 440 F.3d 900, 901 (7th Cir. 2006). We have held that because this standard is stricter than the standard for asylum, a "petitioner who fails to demonstrate eligibility for asylum cannot demonstrate eligibility for withholding of removal." *Prela*, 394 F.3d at 519; *see also Hasanaj v. Ashcroft*, 385 F.3d 780, 783 (7th Cir. 2004). Because Varghese has not shown that the record compels us to conclude that he is eligible for asylum, any attack on the denial of his withholding of removal application would be to no avail.

Accordingly, we deny the petition for review.

---

[1] If the evidence compelled us to conclude that Varghese experienced past persecution, then the government would bear the burden of demonstrating that Varghese could safely relocate within India. *See* 8 C.F.R. § 208.13(b)(1)(i)(B).