NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued February 22, 2007
Decided March 13, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2692

| | |
|---|---|
| JUDE STEPHEN DAS, <br> *Petitioner*, | Petition for Review of an Order of <br> the Board of Immigration Appeals |
| *v.* | No. A75-825-269 |
| ALBERTO R. GONZALES, Attorney <br> General of the United States, <br> *Respondent*. | |

### O R D E R

Jude Stephen Das, a citizen of India, petitions for review of the Board of Immigration Appeals' order affirming the Immigration Judge's decision to deny his asylum claim.  The BIA determined that, even though Das successfully established past persecution on account of his Christianity, he did not have a well-founded fear of future persecution because the Department of Homeland Security demonstrated that he could reasonably relocate within India.  Because the evidence that the BIA relied on does not rule out the possibility that Das would be at risk throughout India, we vacate and remand.

Das is from Hyderabad in south-central India, where he lived in a residential colony associated with the Catholic church that he attended. Das was employed by his church to clean the premises and help the priest during mass. In the early 1990s, Das saw some Hindus selling drugs and alcohol on the church grounds. He informed the police, who took no action. In 1994, when the activity continued, Das told the people to stop. The Hindus attacked him with large sticks and threatened him with knives and swords. A couple months later they went to his house and again beat him as well as his brothers and disabled father. This time the police responded, but they arrested Das along with the Hindu attackers. The attackers were promptly released, but Das was held for two days and beaten by the police with a weapon he described as a "tire tube." He was attacked twice more by Hindus in 1995 with stones, knives, iron pokers, and "knuckle busters." The attacks prompted Das to leave for the United States in 1996.

Das applied for asylum, and the IJ denied his application on the ground that he had not shown past persecution. This decision was reversed by the BIA, which accepted that Das had been imprisoned briefly and attacked several times including while he was imprisoned. The BIA also found that Das had suffered serious injuries, and expressly determined that he was persecuted in the past on account of his Christianity. The BIA remanded the case to give the DHS a chance to rebut the presumption that Das had a well-founded fear of future persecution by showing that country conditions had changed or that Das could avoid future persecution by relocating to another part of India.

At the hearing on remand in 2005, the DHS declined to question Das and submitted no evidence other than the 2003 State Department Country Report on Human Rights Practices and the 2004 International Religious Freedom Report, both of which describe violent attacks targeted at Indian Christians.

The IJ determined that the DHS failed to show changed country conditions such that Das no longer had a well-founded fear of persecution, but successfully showed that Das could reasonably relocate within India to avoid persecution. The IJ based his conclusion on the country reports, characterizing them as showing that India was a secular state and that violence against Christians was "localized." These reports described "sporadic violence in some communities," the IJ observed, but overall there were "generally peaceful and tolerant conditions in most of the country." He went on to say that his conclusion was bolstered by Das's inability to testify to any specific attacks on Christians in India since his last hearing five years earlier. Das appealed, and the BIA affirmed, observing that the country reports showed that India was secular and adopting the IJ's finding that violence against Christians was "localized."

On appeal Das's strongest argument is that the country reports submitted by the DHS and relied on by the BIA do not support the BIA's conclusion that he could

avoid persecution by relocating within India. Das points out that the country reports do not characterize violence against Christians as localized. On the contrary, they detailed attacks against Christians in at least ten Indian states, spread out over all areas of the country.

Because the BIA decided that Das established past persecution, he is entitled to the presumption that he has a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1); *Sosnovskaia v. Gonzales*, 421 F.3d 589, 593 (7th Cir. 2005). Therefore the DHS had the burden of rebutting the presumption by showing that he could avoid future persecution by relocating and that it would be reasonable for him to do so. *See* 8 C.F.R. §§ 208.13(b)(1)(i)(B), (b)(1)(ii).

We agree with Das that neither the 2003 State Department Report nor the 2004 International Religious Freedom Report reflects that violence against Christians is "localized." Das's characterization of the reports as showing violent incidents against Christians in many areas of the country is also correct. Attacks by Hindus mentioned in the reports include an incident in central India where a priest was beaten unconscious, the burning of a church in east India, violence against students and staff at a Bible school in south India, and an assault against a Christian missionary, also in south India. The Religious Freedom Report does note that three states in India have Christian majorities, but these states are very small, and the DHS did not provide any information about whether it would be reasonable for Das to relocate there. For example it did not discuss whether he speaks the local language or whether the economy in these small states is strong enough for him to find work there. Given the fact that the country reports submitted by the DHS show that violence is occurring in many areas of India, it is unclear how these reports successfully rebut the presumption that Das has a well-founded fear of persecution, especially as the BIA does not cite a particular section of the reports to support its conclusion that the attacks are "localized."

The DHS does not illuminate this point, choosing instead to rely generally on sections of the reports that are irrelevant to Das's case. For example, the DHS argues that the reports corroborate the prospect of internal relocation because the Indian government is secular and has no official policy prohibiting freedom of religion. But this argument does not refute Das's claim that he was attacked by private groups of Hindu extremists whom the government cannot or will not control, nor does it show these groups do not exist countrywide. The DHS also points to references in the reports confirming that attacks against Christians have decreased. But a general decrease in overall attacks does not rule out the possibility that the violence has spilled over into all parts of the country.

The reports may suggest that the situation is not so bad for Christians as it used to be but they do not show that violence is confined to particular areas of India. Indeed, they show that Christians continue to be targeted for violence in

many regions, and thus tend to support Das's position that relocation is not a reasonable option on the basis of this record. *See Kaiser v. Ashcroft*, 390 F.3d 653, 660 (9th Cir. 2004) (Pakistani applicants who received threats in two different Pakistani cities located on opposite sides of the country could not relocate internally). Given the serious attacks that Das has suffered in the past and the fact that it was the DHS's burden to rebut the presumption that Das has a well-founded fear of persecution, the mixed information in the country reports is not enough to support the BIA's finding that Das could safely relocate. *See Arboleda v. U.S. Attorney General*, 434 F.3d 1220, 1224-25 (11th Cir. 2006) (per curiam) (DHS did not meet its burden of showing the reasonableness of internal relocation when it relied solely on contradictory information in country reports and State Department Asylum Profile that partly suggested internal relocation was not an option); *Bace v. Ashcroft*, 352 F.3d 1133, 1139-41 (7th Cir. 2005) (DHS did not meet its burden of showing internal relocation was reasonable for Albanian applicants where mixed information in country report partly supported applicants' claims).

Das also argues that the BIA erred by failing to consider whether it was reasonable as well as safe for him to relocate. In particular, he contends that the BIA ignored evidence that he would have difficulty finding a job and that he had limited family ties outside Hyderabad.

When determining whether internal relocation is a possibility, the BIA and the IJ must consider not only whether the applicant can avoid persecution by relocating, but also whether it would be reasonable for him to do so. 8 C.F.R. § 208.13(b)(1)(i)(B); *Arboleda*, 434 F.3d at 1226. But here, the BIA did not discuss any of the factors that are part of the reasonableness analysis such as "any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." 8 C. F. R. § 208.13(b)(3); *see also Bace* 352 F.3d at 1140. The IJ, in turn, gave them only cursory consideration. If on remand, the IJ ultimately decides that the DHS has met its burden of showing Das can relocate safely, it must provide a fuller discussion of these factors than it has done up to this point.

For these reasons, we VACATE the order of the BIA and REMAND the matter for further proceedings.