**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0063n.06
Filed: January 18, 2008

NO. 06-3718

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ARMANDO MARTINEZ, | ) | |
| | ) | |
| *Petitioner-Appellant,* | ) | ON APPEAL FROM THE BOARD |
| | ) | OF IMMIGRATION APPEALS |
| v. | ) | |
| | ) | |
| MICHAEL B. MUKASEY, | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

**Before: CLAY and GIBBONS, Circuit Judges; and HOOD, Senior District Judge.**[*]

**HOOD, Senior District Judge.** This is an appeal from the decision of the Board of Immigration Appeals ("BIA"), affirming the decision of the Immigration Judge ("IJ") denying asylum and relief from removal under the Immigration and Naturalization Act ("INA"). The BIA affirmed the denial of relief without opinion. The Petitioner-Appellant, Armando Martinez ("Martinez" or "Petitioner"), appeals the decision of the BIA, arguing that it was not supported by substantial evidence and was not appropriate for summary affirmance. For the reasons stated below, the Court **DENIES** the petition for review and **DENIES** Petitioner's request to remand this matter for further consideration of his Temporary Protected Status ("TPS").

_____

[*] The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. Factual and Procedural Background

Petitioner Martinez is a thirty-nine year old native of El Salvador who currently resides in Ohio. On or about January 20, 1992, Martinez entered the United States without inspection. In May 1996, he filed an application for asylum and withholding of removal (Form I-589) with the United States Immigration and Naturalization Service (INS).[1] Martinez applied for asylum under Section 309(c)(5) of the Act. Applications for asylum are also considered applications for withholding of removal under Section 241(b)(3) of the Act.

In May 1997, the INS served Martinez with a Notice to Appear charging that he was subject to removal from the United States pursuant to section 212(a)(6)(A)(I) of the INA because he entered the country without being admitted or paroled after inspection by an Immigration Officer. Martinez's hearing was continued so that he could obtain counsel, and when the proceedings reconvened on December 5, 1997, he conceded the factual allegations and the charge of removability contained in the Notice to Appear and sought asylum and withholding of removal.

On June 13, 2000, Immigration Judge Elizabeth A. Hacker denied Martinez's request for asylum and withholding of deportation and granted his application for voluntary departure. Martinez filed a timely appeal to the Board of Immigration Appeals on July 6, 2000, and, during the pendency of that appeal, the BIA administratively closed the proceedings because the Attorney General designated El Salvador under the Temporary Protected Status program.[2]

---

[1]  Since March 1, 2003, the INS is no longer in operation, and its duties have been transferred to the U.S. Citizenship and Immigration Services within the Department of Homeland Security.

[2]  Martinez initially applied for TPS on September 17, 2001. His application was denied on June 5, 2002, because he failed to provide a national identity document to establish his last name, a requirement under 8 C.F.R. § 244.9(a)(1). There is no evidence in the record that Martinez appealed this denial of his application. It appears that he did file an I-821 TPS application on June 14, 2006, which was denied, and has filed an appeal which remains pending before the

2

On March 17, 2006, the United States Department of Homeland Security, Bureau of Immigration and Customs Enforcement moved to reinstate Martinez's appeal. Finally, on April 26, 2006, the BIA reinstated the proceedings, affirmed the IJ's decision without an opinion, and ordered Martinez's voluntary departure. Martinez filed a timely Petition for Review with this Court on May 30, 2006.

Petitioner's application for asylum asserts political opinion and membership in a particular social group as grounds for asylum and withholding of removal under the INA. The application alleges that he was persecuted and tortured and then threatened with death by guerrillas of the Frente Farabundo Martí para la Liberación Nacional (FMLN) because he refused to join their organization. Martinez alleges that while living in La Libertad, El Salvador, (1) he and his family were persecuted and threatened by the FMLN sometime in 1989 or 1990, (2) he was questioned by guerillas as he was walking home from work in 1990, and (3) his home was invaded and he was interrogated and tortured by FMLN guerillas in June of 1991.[3]

While in El Salvador, Petitioner worked as a waiter near the marina, an area frequented by the police and the military. He is a high school graduate and, during his time at school, was friends with several individuals who went on to join the national police. He was not, however, involved in political matters. With regard to his reasons for not cooperating or joining the FMLN when approached by the group, Petitioner testified as follows:

> Well, the problem was because I was not in favor of the left wing

Commissioner. Although Petitioner states that he filed a Motion to Reopen this matter before the Commissioner, based on his pending TPS application, and that motion was denied in 2006, there is no record of the application, its denial, or the Motion to Reopen to consider the TPS application in the record presented before this Court.

[3] As a general matter, there is no dispute that the events recounted by Petitioner unfolded as he has described them. As the specifics of the treatment of Petitioner at the hands of the FMLN are not relevant to the legal issues presented on appeal, they will not be detailed here.

3

groups....

But I refused to help them that way because I was against them....

I did not agree with their opinions because of what they were doing...They were killing a lot of people. The - the confrontations that they had with the military, there were dead - deceased people or dead people. They killed a lot of people from the fields in the country that refused to belong to them or with them.

[J.A. at 112, 113, 115.] In an earlier statement, accompanying his I-589 Petition, he explained:

In the year of 1989, the guerilla of the National Liberation Front FMLN wanted recruited me [*sic*] but I refused to join with them because I was not agree with it ideas [*sic*]. Due to this reason my family . . . and I were persecuted and threatened to death by the FMLN because they accused me of collaborating with the militaries.

[J.A. at 233.]

The IJ found that his "testimony and evidence in this case taken in its best light does not establish either past persecution or a well-founded fear of future persecution because he could not establish that the persecution was on account of *his* political opinion rather than those of the persecutor, the FMLN." [J.A. at 78.] The IJ further found that the evidence demonstrated "that while he generally did not believe in the same leftist beliefs advocated by the FMLN in El Salvador, he did not wide[ly] publish his beliefs nor did he belong to any organizations or groups which publicly advocated anti-FMLN sentiments." [*Id.* at 79.] The IJ considered the evidence "that the respondent worked at various restaurants in the port area of the city and may have gone to high school with members of the national police. [*Id.* at 79-80.] That he had no special knowledge by virtue of his occupations or friendships." [*Id.*] Having considered the evidence, she found that there was "no evidence to indicate the basis by which the respondent draws his belief [that he was mistaken for someone else]." [*Id.* at 79.]

## II. Standard of Review

This Court has jurisdiction to review the final decision of the BIA "affirming the IJ's denial of asylum, withholding of removal, and relief under the Convention Against Torture." *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005); 8 U.S.C. § 1252. If the BIA affirms the IJ's decision without opinion or adopts its reasoning, then this Court reviews the IJ's decision directly. *Singh*, 398 F.3d at 401. The INA provides that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Credibility determinations, likewise, are reviewed under the substantial evidence standard. *Id.*

Thus, the Court "review[s] administrative findings of fact, such as whether an alien qualifies as a refugee, under the substantial evidence standard, keeping in mind that such findings are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary'". *Singh*, 398 F.3d at 400 (*quoting* 8 U.S.C. § 1252(b)(4)(B)) (internal citations omitted). The IJ's denial of withholding of removal is also reviewed under the substantial evidence standard. *Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005). The decision to deny asylum based on "humanitarian" reasons, on the other hand, is reviewed for an abuse of discretion. 8 C.F.R. § 1208.13(b)(1)(iii); 8 U.S.C. § 1252(b)(4)(D); *Ngarurih v. Ashcroft*, 371 F.3d 182, 191 (4th Cir. 2004).

## III. Analysis

### A. Substantial Evidence Supported the IJ's Denial of Asylum and Withholding of Removal

In order to qualify for asylum, the applicant must (1) qualify as a "refugee" pursuant to 8 U.S.C. § 1101(a)(42)(A), and (2) the situation must warrant an exercise of discretion by the IJ. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). A "refugee" is defined as any person "who is unable or unwilling to return to" the person's country of nationality "because of persecution or a well-

5

founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Eligibility for asylum can be achieved if the applicant can effectively demonstrate that he has been subjected to past persecution based on the enumerated protected grounds. *Yu*, 364 F.3d at 702; *Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005). If the applicant proves past persecution, then he is:

> . . . presumed to have a well-founded fear of future persecution, but this presumption may be rebutted by the government if it shows by a preponderance of the evidence that conditions in the country have changed so fundamentally that the applicant no longer has a well-founded fear of persecution.

*Singh,* 398 F.3d at 401. When an asylum applicant "demonstrates that [he] was persecuted on the basis of more than one factor, [he] is eligible for asylum so long as one of those factors is a protected ground under the INA." *Marku v. Ashcroft*, 380 F.3d 982, 988 n. 10 (6th Cir. 2004).

In order to establish that the applicant has a well-founded fear of future persecution, the petitioner must show:

> . . . (1) that he has a fear of persecution in his home country on account of *race, religion, nationality, membership in a particular social group, or political opinion*; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; and (3) that he is unable or unwilling to return to that country because of such fear.

*Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (emphasis added). A "well-founded fear of future persecution" has both objective and subjective components: "an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id*.

The applicant bears the burden of demonstrating that he was a "refugee" with eligibility for

6

asylum. *See* 8 C.F.R. § 208.13(a); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). The applicant must provide evidence in support of his claim which is "believable*,* consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear." *Ali v. Ashcroft*, 366 F.3d 407, 411 (6th Cir. 2004) (quoting *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994)). The applicant's own testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a); *Perkovic*, 33 F.3d at 621 (stating that the petitioner can sustain the burden of proof by her testimony alone, if "the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear"). "[W]here it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *In re S-M-J-,* 1997 WL 80984, 21 I. & N. Dec. 722, 724-26 (BIA 1997) (quoted in *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004)).

Persecution has been defined by the BIA as a harm or suffering inflicted upon an individual in order to punish the individual for possessing a belief or characteristic the entity inflicting the harm seeks to overcome. *Matter of Acosta*, 1985 WL 56042, 19 I&N Dec. 211 (BIA 1985), overruled on other grounds by *Matter of Mogharrabi*, 1987 WL 108943, 19 I&N Dec. 439 (BIA 1987). The Sixth Circuit has held that "persecution . . . requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Pilica*, 388 F.3d at 950 (internal citations and quotations omitted). The presumption of persecution can be rebutted, however, upon "a showing that the conditions in the applicant's home country have 'changed to the degree that the danger no longer exists.'" *Chen v. INS*, 359 F.3d 121, 127 (2d Cir. 2004) (quoting *Secaida-Rosales v. INS*, 331 F.3d 297, 306 (2d Cir. 2003)); *see also* 8 C.F.R. § 208.13(b)(1)(i)(A). If the applicant proves either past

7

persecution or a well-founded fear of future persecution, then he must show that this is the type of situation that warrants an exercise of discretion to grant asylum. *Yu*, 364 F.3d at 702.

The Supreme Court has held that the forced recruitment of persons into guerilla organizations does not constitute "persecution on account of political opinion." *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). The political persecution must be on account of the victim's beliefs, not those of the persecutor. *Id.*[4]

This is illustrated in the matter of *Alfaro-Rodriquez v. INS*, 203 F.3d 830, 1999 WL 1091990 (9th Cir. 1999), where the Petitioner testified that he left El Salvador because the FMLN, of which his father was a member, was attempting to force him into their ranks, harassing, threatening, and, on one occasion, beating him in an effort to recruit him. He testified that he feared returning to his homeland because the guerillas were still looking for him and wished for him to join their group. *Id.* at *1. The BIA denied asylum, although finding his testimony to be credible, as his case was one of recruitment, rather than persecution on account of a political opinion and determined that he had not suffered past persecution, had no well-founded fear of persecution, and, in the alternative, had no political opinion. *Id.* at *2. On review, the Ninth Circuit affirmed the BIA's decision, concluding that, while the panel might have evaluated the testimony differently and perhaps reached a different conclusion, the evidence was not "so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Id.* (quoting *Elias-Zacarias*, 502 U.S. at 481, 483-84); *see also Portillo v. Gonzales*, 236 F. App'x 171, 175 (6th Cir. 2007) (BIA did not err in finding no

---

[4] The fact that guerillas seek to fill their ranks in order to carry on their war against a government and pursue *their* political goals does not render forced recruitment "persecution on account of ...[the petitioner's] political opinion." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). As explained by the Supreme Court in the matter of *Elias-Zacarias*, the petitioner would need to establish that the record compelled the conclusion that he had a "well-founded fear" that the guerrillas would persecute him *because of* his political opinion, rather than because of his refusal to fight with them. *Id.*

persecution on basis of political opinion where individual was kidnapped by FMLN as a child to serve in armed forces where evidence revealed instead that he was a member of a particular social group: young men living in hotly contested war zones who are easy to kidnap) .

In the matter of *Hernandez-Baena v. Gonzales*, 417 F.3d 720 (7th Cir. 2005), the petitioner claimed that he suffered past persecution on account of political opinion or imputed political opinion when a Colombian guerilla group (FARC) targeted him for death for refusing to sell military supplies in violation of Colombian law. *Id.* at 722. Hernandez-Baena also claimed that he had a well-founded fear of future persecution, contending that FARC would carry out its death threat if he returned to Colombia. *Id.* The IJ rejected the Petitioner's claim that he had been persecuted or even harassed on account of political opinion or imputed political opinion as his testimony demonstrated that he refused to comply with the request of the FARC members because he did not want to go to jail for violating Colombian law – not because of a political opinion. *Id.* Refusal to cooperate with a group is not a "political opinion" simply because one's behavior conformed to the law. *Id.* at 723.

Similarly in *Sanchez v. U.S. Attorney General*, 392 F.3d 434 (11th Cir. 2004), it was not enough for a petitioner "to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas*." Id*. at 438. Although the evidence was consistent with a finding that a guerilla group (FARC) harassed the petitioner due to her refusal to cooperate with them because she was "not in agreement with the way [guerillas] had destroyed the country," it was not sufficient to qualify for withholding of removal under the INA. *Id.* at 436, 438 (citing *Elias-Zacarias*, 502 U.S. at 483).

In this instance, Petitioner's application for asylum was premised on alleged persecution as a result of political opinion and membership in a particular social group. The IJ found, however, that Petitioner did not have a particular political opinion which subjected him to the attentions of the FMLN and that he was, instead, the victim of a guerilla group's efforts to conscript someone to its

9

cause. Petitioner argues that the IJ did not properly apply the analysis set forth in *Elias* for a determination of whether a person is persecuted "on account of political opinion" when a guerilla organization attempts to coerce the cooperation of an individual. Petitioner avers that the IJ "failed to consider his political opinion as a basis for resisting conscription" and states that the fact that he "did not widely publish these opinions is not legally relevant to the issue of whether he held these beliefs." According to Petitioner, "[h]is desire to resist their efforts was based on his ideological opposition to the FMLN," and he "possessed and expressed a clearly defined political opinion in opposition to the FMLN."

Undoubtedly, based on his testimony, Petitioner was "not in favor" of the FMLN, "was against them," "did not agree with their opinions," did "not agree with it[s] ideas," and did "not agree with their philosophy."[5] That said, considering the evidence of record in this matter and the administrative findings of fact, there is no indication that any reasonable adjudicator would be compelled to conclude that his maltreatment by the FMLN was "on account of" his political opinions. Indeed, there is little if any evidence that Petitioner held a political opinion known to the FMLN which would have served to motivate his persecution at the hands of its members. *Singh*, 398 F.3d at 400 (*quoting Yu*, 364 F.3d at 702). Rather, as in *Alfaro-Rodriquez* and *Sanchez*, the evidence suggests that the FMLN wanted to put Petitioner to work for its ends, regardless of his political opinions. His relationships, whether real or perceived, with individuals employed by the police and his job at a strategic location may have made him a particularly attractive recruit, but their alleged pro-government leanings do not appear to have necessarily been imputed to him. Even if the FMLN thought that Petitioner was sympathetic to the government, the evidence presented through

---

[5] Petitioner relies, as well, on his declaration that he was accused of collaborating with the military when he refused to join the FMLN, which the IJ found it to be incredible considering the lack of testimony on the issue at his administrative hearing. Her credibility finding is discussed below.

10

Petitioner's testimony supports the IJ's finding that the motivating force behind the FMLN's advances to Petitioner was to seek information about the marina, the national police, and the military from someone who might have it.

This matter is distinct from that presented in *Abdulnoor v. Ashcroft*, No. 03-3001, 2004 WL 1894731, *1 (6th Cir. Aug. 19, 2004), in which it was determined that the BIA erroneously concluded that fear of persecution was not related to a protected ground when it failed to consider imputed political opinion. The testimony in *Abdulnoor* demonstrated that, because weapons for which the petitioner was responsible ended up in the hands of a group plotting a coup against Saddam Hussein, support of that cause was imputed to the petitioner and he was sentenced to death. *Id.* In the case of Petitioner Martinez, the evidence does not suggest that the FMLN sought him out in whole or in part in order to punish him "for possessing a belief or characteristic [of a political nature his] persecutor sought to overcome," but because he might be someone who could help them meet their own aims. *See Matter of Acosta*, 19 I&N Dec. 211. Even assuming that more than one ground motivated Petitioner's persecution by the FMLN, he has not identified evidence to establish a single protected ground - political opinion or otherwise - which would support his eligibility for asylum. Since substantial evidence supports the IJ's decision that Petitioner is not eligible for asylum, he cannot meet the more stringent standard for withholding of removal. *Ramaj v. Gonazales*, 466 F.3d 520, 532 (6th Cir. 2006).[6]

Since there is no compelling evidence to overturn the IJ's finding that Petitioner has failed to establish past persecution, Petitioner bears the burden of proof on the issue of future persecution.

---

[6] The standard for withholding of deportation is "more stringent" than that for granting asylum, and the applicant must demonstrate that his "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004) (quoting, in part, 8 U.S.C. § 1253(h)(1)).

He complains that the IJ erred in failing to perform an individualized analysis of changed country conditions when she relied solely on copies of the State Department Country Reports for 1996 and 1997 to conclude that conditions in El Salvador had changed substantially since his departure from his homeland in 1991.[7] The IJ noted the 1992 peace accords signed by the FMLN and reports that former guerillas have begun participating in organized political activities and ceased the other types of activities which were part of the civil war. She also considered letters of friends and family presented by Petitioner, warning him of threats, as well as newspaper articles concerning events in El Salvador not specifically related to Petitioner, although the IJ gave them little weight. The IJ found that they did not "relate to the respondent at all," and she was concerned with how Petitioner's friends and family could know the identity and, in one instance, the name of the individuals who attacked him when he, himself, did not. Recognizing that Petitioner might have a subjectively genuine fear of returning to El Salvador, she found that the Petitioner's fear was not, however, supported by credible objective evidence of record. Considering the evidence presented, the IJ concluded that Petitioner could not demonstrate a well-founded fear of future persecution and that he had failed to establish a clear probability that his life or freedom would be threatened on the basis of any of the five statutory grounds should he return. The IJ's decision is supported by substantial evidence of record. Since substantial evidence on the issue of fear of future prosecution supports the IJ's decision that Petitioner is not eligible for asylum, again, he cannot meet the more stringent standard for withholding of removal. *Ramaj*, 466 F.3d at 532.

Substantial evidence supports the IJ's decision that Petitioner is not eligible for asylum based

---

[7] Petitioner argues that, in addition to the letters which he submitted, providing evidence of continued threats against his life, even the July 1997 Country Profile indicates that violence is still common and used to "obtain political results." Considering his failure to establish a political opinion upon which his persecution was based before the IJ, this seems largely irrelevant to his particular situation.

on past or fear of future persecution. The IJ did not err in denying Petitioner's application for asylum or for withholding of removal, nor did the BIA err in adopting the IJ's decision as its own.

### B.    IJ's Credibility Finding Is Due Substantial Deference

"While an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). By requiring the IJ to state specific reasons for his or her credibility determination, the Court is able "to conduct a more effective, and even more efficient, review and...allow [the court] to determine if an IJ's or the BIA's inferences are reasonable." *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 n. 7 (6th Cir. 2004). The specific reasons cited by the IJ must be "based on issues that go to the heart of the applicant's claim." *Sylla*, 388 F.3d at 926.

> They "cannot be based on an irrelevant inconsistency." *Daneshvar*, 355 F.3d at 619 n. 2 (6th Cir. 2004). "If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Id.* at 623 (quoting *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000)).

*Id.*; *see Bandari v. I.N.S.*, 227 F.3d 1160, 1166 (9th Cir. 2000) (declining to affirm IJ's adverse credibility finding based on discrepancy as to the date on which petitioner received a particular type of beating with a specific kind of instrument among many attacks police inflicted).

In this instance, the IJ commented that she "[had] some difficulties with some of the testimony vis-a-via [*sic*] the application," pointing out discrepancies between the year in which Petitioner alleges that he was attacked by the FMLN in his testimony (1990) and the year alleged in his application (1991). [J.A. at 77.] She was also concerned with the lack of testimony on the allegation made in Petitioner's application that he and his family were pressured by the FMLN over a period of time in 1989, "threats [that] apparently had to do with the alleged collaboration of the respondent with the military," upon which Petitioner bases his argument that his persecution was due

13

to political opinion. *Id.*

Petitioner argues that there are difficulties posed to fact finders where "differences of language, culture, and experience exist between the applicant and the IJ, particularly when there is a lack of corroborating evidence and the adjudicator has limited understanding of political and social conditions of other countries." Petitioner has not, however, suggested that there were not inconsistencies or omissions in his testimony or that the IJ simply misunderstood or misconstrued his words. Indeed, contrary to Petitioner's assertion, the IJ specifically identified the inconsistencies and omissions with which she was concerned. Having stated specific reasons – the lack of testimony to support his otherwise conclusory claim that the FMLN believed he had collaborated with the military – and considering their clear relevance to the issue of whether Petitioner was persecuted on account of a political opinion, there was no error. The IJ's credibility finding is due substantial deference, and the BIA was not in error when it adopted the IJ's credibility findings.

## C.    IJ Properly Considered Documentary Evidence

Due process in an administrative hearing requires that the hearing officer actually consider the evidence and argument. *See Morgan v. United States*, 298 U.S. 468, 481-82 (1936). Once that evidence has been considered, any challenge to the evidence goes to its weight, not its admissibility, in an administrative immigration case. *See generally Navarette-Navarette v. INS*, 223 F.2d 234, 237 (9th Cir. 1955).

With regard to the letters provided from friends and acquaintances, the IJ noted, "I am somewhat trouble [*sic*] by the fact that a foundation for these has not been well laid." J.A. at 80. Contrary to Petitioner's argument that the IJ refused to properly consider these letters submitted in the record, the record demonstrates that the IJ properly considered the evidence and made a determination as to its "weight" based upon her findings. In fact, the record demonstrates that the IJ considered the evidence in some detail, although she found it not to be persuasive. Without

14

dispute, the IJ did consider the letters and detailed her concerns about the letters, stating, "therefore, I can give very little weight to these letters . . ." J.A. at 80-81. The IJ afforded Petitioner due process in his administrative hearing, considering evidence and argument. It follows that the BIA did not err in adopting her decision, and it will not be reversed on these grounds.

**D.      The BIA Did Not Err in Streamlining Martinez's Appeal by Affirming the IJ's Decision Without an Opinion**

8 C.F.R. § 1003.1(e)(4)(i) permits a single board member to affirm the decision of an IJ without opinion if the board member determines (1) that the result reached in the decision was correct, (2) that any errors in the decisions were harmless, and (3) that the issues on appeal are squarely controlled by existing BIA or federal court precedent. An order affirming the decision of an IJ without opinion must read as follows:

> The Board affirms, without opinion, the result of the decision below.
> The decision below is, therefore, the final agency determination. *See*
> 8 C.F.R. 1003.1(e)(4).

8 C.F.R. § 1003.1(e)(4)(ii). The BIA utilized precisely that language in its order without an opinion affirming the IJ's decision with regard to Petitioner.

The Sixth Circuit has held that the BIA's summary affirmance process and the affirmance of an IJ's decision without issuing an opinion do not violate a petitioner's due process rights. *See Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003) ("It is not a due process violation for the BIA to affirm the IJ's decision without issuing an opinion."). As explained in *Denko*, "[e]ven if the BIA would view the factual and legal issues differently from the immigration judge, the summary-affirmance-without-opinion rule renders the IJ's decision the final agency order, and we review that decision. Thus, [the petitioner] receives the "full and fair" review that [he] is entitled to receive." *Id.* (citing *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001); *Georgis v. Ashcroft*, 328

F.3d 962, 967 (7th Cir. 2003)).

Petitioner has not identified how this Court's review of the IJ's opinion, adopted as the agency's final order, would prevent him from receiving the "full and fair" review which he is entitled to receive. Accordingly, the record demonstrates that the BIA properly issued a summary affirmance under 8 C.F.R. § 1003.1(e)(4).

**E. This Court Lacks Jurisdiction Over Martinez's Claim for Temporary Protected Status**

This Court lacks jurisdiction over Petitioner's petition to this Court to grant the extraordinary relief of remanding his eligibility for TPS for reconsideration as requested. 8 U.S.C. § 1252(d)(1) provides that federal courts are without jurisdiction to hear an immigration appeal when administrative remedies have not been exhausted. *Ramani*, 378 F.3d at 559-60. Where both exhausted and unexhausted claims are presented in the same appeal, only those claims that are properly exhausted may be considered. *Id.* With regard to his first application for TPS in 2001, Petitioner did not timely exhaust his administrative remedies, as there is no record of an appeal of that matter.

Petitioner's brief states that he "has recently submitted an appeal to the Administrative Appeals Unit" concerning the denial of a second TPS application, an application which he identifies in his reply brief as having been made in 2006. In the same reply brief, Petitioner states that he made a Motion to Reopen this matter before the BIA in order that it might consider his TPS status. There is no other indication or evidence of this 2006 application, appeal, or motion in the record before this Court, nor has Petitioner asked this Court to review the decision of the BIA on his Motion to Reopen.

16

Rather, Petitioner has urged this Court to consider this matter anew, citing the recent BIA opinion in *In re William Osmin Barrientos*, 24 I&N Dec. 100, 2007 WL 626222, *101-102 (March 1, 2007 BIA), for the proposition that statutes and regulations require that *de novo* review of eligibility for TPS take place in removal proceedings, even if an appeal has previously been denied by the Administrative Appeals Unit. *Id.* (ordering remand to IJ for reconsideration of TPS status raised where IJ had declined to consider citing administrative exhaustion requirements). Assuming that Petitioner has accurately recounted the proceedings below, including his Motion to Reopen filed therein, he has raised this issue before the BIA within these proceedings, but has not timely raised the BIA's decision on appeal before this Court. Petitioner has provided no record which would permit this Court to review the decision below, and the Court declines to do so at this time.

## IV.     Conclusion

For all of the reasons stated above, it is the decision of this Court that the BIA's adoption of the IJ's opinion was proper. The petition for review is **DENIED.** Petitioner's request that this Court "remand" this matter for further proceedings before the BIA regarding consideration of his TPS status is not properly before this Court on appeal and is **DENIED**.